### PINE v. ROGERS.

No. 27381.  March 15, 1938.

Chas. B. McCrory, for plaintiff in error.

E. J. Gilder, for defendant in error.

PHELPS, J. Ralph Rogers, defendant in error, plaintiff below, instituted suit against W. B. Pine, plaintiff in error, to recover damages for personal injuries.

The trial resulted in a verdict and judgment for plaintiff, and defendant appeals, alleging that the verdict and judgment is excessive, contrary to the law and evidence, and that the court erred in instructing the jury and in refusing to give certain instructions requested by the defendant. Defendant particularly complains of instructions numbered 6, 8, and 13.

Plaintiff was employed by defendant as a laborer on a hog ranch operated by the defendant at a salary of $50 a month. Among his duties was the operation of a gasoline engine used for pumping water for defendant's hogs. Plaintiff was about 30 years of age. The pump was started by means of a detached hand crank, readily adjusted, when properly placed and used, to a groove in and along the crank shaft. The fly wheel, "key wedge" or pin in the groove of the crank shaft at times worked loose and was replaced in proper position at times by driving the wedge into the groove.

Plaintiff cranked the pump twice a day and at such other times that water was needed. About two weeks before the accident plaintiff noticed the crank slipping off when he started the pump. This had occurred several times while plaintiff was operating the pump. Plaintiff had warned his coworkers that the crank was danger-

ous and mentioned the difficulty to one of his superiors.

Later a mechanic appeared and examined the pump. Plaintiff was present and observed what the mechanic did to the pump, and observed particularly that the mechanic did not fix the pin entering the groove in the crank shaft hereinbefore mentioned. Plaintiff continued to operate the pump in its unchanged condition for several days after the mechanic's visit. About 7 o'clock in the morning of April 19, 1933, when plaintiff started the pump the crank slipped off and struck him in the mouth breaking off four front teeth and cracking two additional teeth.

Plaintiff continued to work that day and went ahead with his work thereafter until he visited a dentist, about 20 days after the accident. At no time did the plaintiff consult a doctor, and he continued to work for the defendant until in July, 1934, more than a year after the accident.

On the day after the accident plaintiff made a report to the defendant, stating merely that the crank had slipped off and broken four of his teeth. After the accident plaintiff fixed the pump himself by simply driving in the pin with a hammer.

In consulting a dentist he was advised to have his teeth removed. The dentist testified that he advised the removal of the remaining teeth principally on account of the fact that their condition justified their removal for reasons other than the injury. Plaintiff testified that he had had one decayed tooth removed prior to the accident.

There is no testimony in the record of permanent injury to the plaintiff. Plaintiff testified that at the time of the injury he "thought my jaw was broke," but never consulted a doctor, and there was no evidence produced at the trial indicating serious injury to the jaw. The pain and suffering complained of is attributable, under the evidence, to the broken teeth and the removal of the remaining teeth.

The jury awarded the plaintiff damages in the sum of $2,500.

Plaintiff incurred an expense of $70 which included a complete set of artificial teeth.

Plaintiff's duties, principally, were confined to those usually engaged in by farm laborers employed by farmer-stockmen in the operation of their farms. The equipment used in the operation of the pump is the kind of equipment generally in use on farms of this character.

An examination of the record convinces us that there was not sufficient evidence to justify the court in giving instruction No. 13.

In that instruction the court told the jury that it should take into consideration the life expectancy of the plaintiff and whether his injuries were permanent or "transitory." The only evidence in support of this issue is the testimony of the plaintiff himself, which is very indefinite and uncertain. The evidence shows that plaintiff continued working for defendant the remainder of the day of the injury and for more than a year thereafter, when his services were discontinued; losing no time from his employment except the days that he visited his dentist. There is no additional evidence indicating that the injuries received are permanent so as to affect his life expectancy. Mortality tables were not presented in evidence and the testimony shows that plaintiff at no time consulted a doctor, nor was any testimony of medical experts presented in the trial of the cause. The injury complained of was of such a character as to require skilled and professional men to determine the nature of the injury and the extent thereof. Jones v. Sechtem, 131 Okla. 155, 268 P. 201; Forrest E. Gilmore Co. v. Hurry, 165 Okla. 29, 24 P.2d 653.

Plaintiff does not dispute the rule enunciated in the cited cases, but argues that the injury is objective and that it is plainly apparent, from the nature of the injury, that defendant must necessarily undergo pain and suffering in the future; therefore, the presentation of expert testimony is not essential. The only evidence of an objective character is plaintiff's testimony of the injury to his teeth. The injury to the jaw, if any, certainly is subjective and called for the testimony of expert witnesses. In Shawnee-Tecumseh Traction Company v. Griggs, 50 Okla. 566, 151 P. 230, this court said:

"There are two rules by which the question of future pain and suffering may be submitted to the jury: If the injury is objective and it is plainly apparent, from the very nature of the injury, that the injured person must of necessity undergo pain and suffering in the future, then most certainly the plaintiff would not be required to prove a fact so plainly evident, and upon making proof of such an objective injury the jury may infer pain and suffering in the future. * * * Where the injury is subjective, and of such a nature that laymen cannot, with reasonable certainty, know whether or not there will be future pain and suffering, then, in order to warrant an instruction on that point, and to authorize a jury to return a verdict for future pain

and suffering, there must be offered evidence by expert witnesses learned in human anatomy, who can testify, either from a personal examination or knowledge of the history of the case, or from a hypothetical question based on the facts, that the plaintiff, with reasonable certainty, may be expected to experience future pain and suffering, as a result of the injury proven."

In Hines v. Dean, 96 Okla. 107, 220 P. 860, this court, in the body of the opinion, said:

"While the testimony shows that at the time of the trial the plaintiff still suffered some pain at times, there is no testimony from which it can be determined whether the pain and suffering would continue, and, if so, for how long; neither does it appear from the nature of the injury that the jury could determine that fact from the nature and character of the injury. This testimony is too indefinite and uncertain upon which to base a substantial recovery for future pain and suffering." Yellow Taxi Cab & Baggage Co. v. Alsup, 175 Okla. 332, 52 P.2d 724; City of Pawhuska v. Crutchfield, 155 Okla. 222, 8 P.2d 685.

Defendant made timely objection to the giving of instructions numbered 13 and 6, given by the court.

The latter instruction is upon the question of assumption of risk. Defendant complains that the instruction is too general and does not properly define the issue as applied to the facts in the case. One of the essential questions in the case for determination by the jury was whether the defendant maintained the gasoline engine with which plaintiff was working when he sustained the injury in a reasonably safe condition for operation by the plaintiff. Since the judgment must be reversed upon other grounds, it is unnecessary to dispose of this assignment of error. We are unable to determine what part, if any, of the recovery was allowed for permanent injuries. Hence, we can find nothing in the record upon which to base an order for a remittitur. Therefore, the judgment is reversed for a new trial.

There are other questions presented, but since there is little likelihood of their arising on a new trial, they will not here be considered.

The judgment is therefore reversed, with instructions to grant a new trial.

OSBORN, C. J., BAYLESS, V. C. J., and CORN and GIBSON, JJ., concur. WELCH, HURST, and DAVISON, JJ., dissent. RILEY, J., absent.