McGOVERN, Respondent v. MURRAY TAXI CO., Appellant

(60 N. W.2d 211)

(File No. 9348. Opinion filed September 28, 1953)

**H. R. Hanley and John M. Costello,** Rapid City, for Defendant and Appellant.

**John C. Farrar,** Rapid City, for Plaintiff and Respondent.

BAKEWELL, Circuit Judge. The defendant, in an action for damages for personal injury appeals from a judgment for the plaintiff. Plaintiff's injury resulted from being struck by a taxicab driven by the defendant's employee. The collision occurred on April 25, 1951. The action was commenced on May 3, 1951, and was tried on November 13, 1951. The jury returned a verdict in favor of the plaintiff for $8,000. A motion for judgment non obstante veredicto was denied as was also a motion for a new trial, and on April 2, 1952, a judgment was entered in favor of the plaintiff. The

appellant assigns numerous errors including denial of its motion for a new trial on the ground among others that the verdict of the jury was excessive and urges that there was no competent evidence of permanent injury to warrant submission of that question to the jury as an element of plaintiff's damage.

The complaint alleges neither a permanent injury, a diminution of future earning power, or that plaintiff will suffer pain and suffering in the future. As the elements of his claimed damage, plaintiff alleges that he

"* * * was prevented from transacting his business, suffered great pain of body and mind, and incurred expenses for medical attention and hospitalization in the sum of One Thousand Dollars, all to his damage and detriment in the sum of Twenty Thousand Dollars."

In reference to his injuries, the plaintiff testified:

"I was hurt all over. My face and shoulder was all scratched and my pelvis was broken. My worst hurt was my pelvis and shoulder and back. I left the hospital around the first of July. After I left the hospital, I was able to get around very little at first. I was on crutches around a month at home. I get around pretty well now. I still have pain in my back and left shoulder but mostly in my hips and have trouble with swelling of my ankles, but not as bad as when I got out of the hospital. I don't gain weight anymore and am fifteen pounds lighter. I am a carpenter foreman. I went back to work about a month ago. Sometimes I am able to work full days and some days not."

The record discloses these specific questions asked of and answered by the plaintiff:

"Q. Are you able to work full time? A. No.

"Q. Are you able to do as much now as before you were injured? A. Not over half.

"Q. Why is that? A. Well, my shoulder and back has been bothering me so bad I can't rest at night, and I ached.

"Q. In what way does your shoulder bother you? A. It seems stiff and aches.

"Q. Is your condition improving? A. It seems to. It hasn't improved in the last three weeks at all. Got worse."

Plaintiff's physician in attendance, Dr. Owen, called as a witness by the plaintiff testified that the fractures were well healed and that as time goes on the callus, or healing material

"will become firmer and an exact part of the bone, but for all purposes the fractured ends are very strong there at the present time."

Dr. Owen further testified that plaintiff had complained of a painful shoulder. On inquiry as to whether the pain in the shoulder would be a permanent thing, the doctor stated that he did not believe it would be a permanent injury unless other factors set in which are unforeseen at the present time.

Dr. Lemley, as a witness for the defendant, testified as to an examination of the plaintiff made by him on July 25, 1951. He testified that this examination disclosed that plaintiff had a fracture of the pelvic bone; two fractures in the same bone. These were well healed and the pelvis was in good shape. There was no deformity or shortening of the legs and X-rays were made of his neck and his lumbar vertebrae, that is the vertebrae in the lower part of the back, his pelvis and shoulders. The only injury found was the fractures of the pelvis which I just stated were well healed and in good condition. As to plaintiff's shoulder, Dr. Lemley stated that the X-ray examination showed no injury—no bony changes. In his physical examination, the ligaments of the shoulder were stiff and sore and, on extreme motion of the shoulder, produced some pain. As to the pain across the back and hips, Dr. Lemley expressed the opinion that plaintiff had hypertrophic arthritis commonly known as rheumatism of the lumbosacral function which is the joint between the pelvis and the back bone, and of the lumbar vertebrae making up the lower spine causing the stiffness and soreness.

Dr. Lemley further testified as to another examination of plaintiff made on November 7th, he stated that the X-ray findings were similar to those at the previous examinations. The shoulder joint was still stiff and sore but had quite a wide range of motion and there was then no condition existing of a permanent nature referrable to the accident. Dr. Lemley described the term "hypertrophic arthritis" as being the result of aging. He said it produced a bony overgrowth in and around the joints and in the ligaments of the joints; that it is a gradual disease and an injury will make the soreness and symptoms of it worse but does not affect the course of the disease particularly, as time goes on. An injury wouldn't hasten the disease, it will just give it more soreness for a while. A person that is older can recover from injury, but this hurts them longer than does an injury. Asked if he had determined any numbness of plaintiff's fingers of the right hand, Dr. Lemley stated that plaintiff had a Dupuytren's contraction which he described as a scarring which occurs at the base of the fingers and in the palms of the hands and causes a limitation of finger motion. It was Dr. Lemley's expressed opinion that this could not have been caused by the collision or from any recent injury, but only from a steady long-continued strain over a period of time—a jarring condition such as transmitted by a hammer handle pounding; that he had seen it in piano players. He expressed the opinion that the contraction in the hand and fingers was neither sustained nor aggravated by the accident.

On inquiry as to a swelling of plaintiff's legs and ankles, Dr. Lemley testified that there was a moderate swelling. Asked if this swelling was referrable to the injuries sustained in the collision the doctor testified that the swelling could be due to an injury insofar as it distorts the circulation; that being in bed for a long time following the accident, it is the usual course of events that the feet and ankles and legs may swell a little bit from the fact that he has been in bed and his circulation has not been kept up and that it is usual that the legs will swell after an accident. Asked whether in the course of his examination he found anything else present in the form of disease of the circulatory system which could have caused the swelling, Dr. Lemley testified

that plaintiff had hardening of the arteries which means there are flakes of calcium all along the larger vessels and in the abdominal aorta, but that this does not necessarily mean that the swelling is due to the arterial disease nor to the accident, but one might aid the other.

▮ To entitle respondent to recover damages for a permanent injury he has the burden of showing with reasonable certainty that the condition of his back and shoulder of which he complains is the result of the collision, and that this condition is permanent. In Shuck v. Keefe, 205 Iowa 365, 218 N.W. 31, the claimed injury was to the right sacroiliac articulation and the pelvic region. The only testimony offered by the plaintiff as to the permanency of the injury was her purely subjective symptoms. There was no evidence of experts that corroborated her claim, nor evidence as to whether the injuries were incurable, or, if curable the probable time it would take to effect a cure. The court said that the very nature of this claim required that the plaintiff present proof of expert witnesses. The mere statement by the plaintiff that she still suffers pain is not sufficient per se to warrant a finding that there will be any future physical suffering because of her injuries.

In Shawnee-Tecumseh Traction Co. v. Griggs, 50 Okl. 566, 151 P. 230, 232, speaking of the testimony of a medical expert, the court said:

"If this witness, skilled in the medical profession, with every opportunity of knowing all the facts relative to plaintiff's injuries, states that he did not know whether the injuries were permanent or not, it is certainly most unreasonable to require a jury to take indefinite and uncertain testimony, and therefrom to find that there was a reasonable certainty that plaintiff would or would not suffer future pain which was the clear and logical result of the injury."

In Horowitz v. Hamburg-American Packet Co., 18 Misc. 24, 41 N.Y.S. 54, 60, where there was no expert testimony offered, Daly, J. expressed the applicable rule of law by saying:

"If a defendant's liability in damages may be allowed to rest upon opinion, it should not be the opinion of a jury without the help of science. If a guess is to have such serious consequences, it should be the guess of a medical man of learning and experience. These observations do not apply, of course, to the loss of a member, nor, perhaps, in the case of a fracture."

None of the findings of these two medical experts is questioned or disputed by other evidence, not even that of the plaintiff, and must be taken and accepted as conclusively establishing that at the time of the trial plaintiff was not suffering from any permanent injury. On the contrary, their testimony establishes as an undisputed fact that plaintiff was suffering from rheumatism in the lower part of his back which caused the stiffness and soreness of the back, and that he has hardening of the arteries which affects the circulation of blood in his legs. What plaintiff's condition of health was prior to the collision does not appear in evidence. Plaintiff assigns no reason for not being able to work as much now as before the accident except that

"my shoulder and back has been bothering me so bad I can't rest at night and I ached."

If, then, the plaintiff at the time of the trial had any bodily infirmity which prevented him from following his occupation of a carpenter foreman, it was in his back and shoulder and not elsewhere. As we have said, the undisputed evidence is that the pain in the back is the result of rheumatism and is in no way referrable to any injury sustained in the collision. The cause of the pain in the shoulder is not so well accounted for by the medical experts. Dr. Owen, the attending physician, testified:

"Mr. McGovern, I have seen him later and he has complained of a painful shoulder. X-ray examinations have been taken of the shoulder. I have seen the x-rays and examined them and I have had two radiologists examine the x-rays and as far as we are concerned those x-rays are negative so far as bone injury is concerned. I think the painful

shoulder may be due to other things than bone injury * * * either to the accident or to the length of time of inactivity of the shoulder, and I think without the usual work or usage of that it has gone ahead and caused increasing pain and disability of the shoulder at the present time. * * * I do not believe it will be a permanent injury unless other factors set in which are unforeseen at the present time."

Dr. Lemley confirmed Dr. Owen's X-ray findings and his observation of stiffness and soreness in the shoulder joint, which joint he describes as having quite a wide range of motion. He gave it as his opinion that no physical defect in plaintiff was referrable to the accident.

The trial court refused to give the following instruction requested by the defendant:

"You are instructed that there is not in this case any element of permanent injury introduced into evidence by the plaintiff, and that the plaintiff has not pleaded any permanent injury or disability resulting from the accident; you, therefore, in the event you find for the plaintiff, must not consider any element of permanent injury in determining damages to be awarded."

And over the objection of defendant, instructed the jury that in fixing the amount of plaintiff's damage it might take into account the age and condition of life of the plaintiff, the physical injury inflicted; bodily pain and mental anguish suffered; all expenses incurred in the treatment of the injury and whether or not such injury is permanent in character; the loss of time and earnings during either temporary or permanent disability resulting from the injury.

The rule in this state as to damages for future detriment is expressed in SDC 37.1702 which provides that damages may be awarded in a judicial proceeding for detriment resulting after the commencement thereof, or certain to result in the future. The word "certain" as here used was held by this court in Peters v. Hoisington, 72 S.D. 542, 37 N.W.2d 410, not to be used in the absolute sense but to en-

able the plaintiff to recover damages which are reasonably certain to accrue in the future.

But this does not mean that the matter of measuring damages may be left to mere speculation on the part of the jury. Facts must exist and be shown by the evidence which afford a basis for measuring the loss of the plaintiff with reasonable certainty. Peters v. Hoisington, supra.

■ To warrant a recovery for a permanent injury, the future effect of the injury must be shown with reasonable certainty. It is not necessary that the evidence show conclusively or without a shadow of doubt that the injuries are permanent, but while absolute certainty should not be required, a mere conjecture, or even a probability, does not warrant the giving of damages for future disability which may never exist. 15 Am.Jur. 486, § 75.

■ In an action for personal injuries, the court should not give an instruction allowing the jury to assess damages for personal injuries or lasting impairment of health unless there is evidence showing with reasonable certainty that such permanent injuries or lasting impairment of health have been, in fact, sustained by the plaintiff. 15 Am.Jur. 815, § 377. In Pine v. Rogers, 182 Okl. 276, 77 P.2d 542, 115 A.L.R. 1146, it was said that where there is no competent evidence of permanent injury and the court instructs the jury that they may take into consideration whether the injury was temporary or permanent, and on appeal the defendant complains of said instruction and assigns as error that the verdict returned is excessive, the court would be unable to determine what part, if any, of the recovery was allowed for permanent injuries and the judgment would be reversed.

In Miller v. McConnell, 23 S.D. 137, 120 N.W. 888, 890, as in this case, the plaintiff's sole claim for damages was for injuries suffered and expenses incurred prior to the commencement of the action. The trial court instructed the jury that in determining the amount of plaintiff's damage, it might take into consideration prospective suffering and loss of health, if any, she has or will sustain by reason of her injuries, together with such physician's services, nursing and drug bills as she would in the future be subjected to by rea-

160

son of the injury. Plaintiff had been permitted without objection to testify that the "pain and sickness still continues up to the present time", and this court held that because of this testimony the trial court was justified in leaving with the jury the question of damages for suffering up to the time of the trial but that it was error to permit the jury to take into consideration, in fixing the damages, prospective suffering and loss of health she will sustain by reason of the injury, or future expenses of care and treatment. We said:

> "It is no answer to this to say that the defendant could not have been harmed for the reason that there was no evidence competent from which the jury could have inferred that there might be further suffering and expenses. The mere giving of such instruction might tend to lead the jurors to suppose that they had a right to presume that there would be such suffering and expenses from the mere facts that there had been suffering and expenses, and plaintiff had sworn that the suffering continued up to the time of the trial. It is impossible for this court to determine whether this instruction affected the verdict, but we must presume that it did."

The same may be said as to the trial court's instruction in this case.

■ ■ There is no competent evidence that the plaintiff sustained any permanent injury in the collision, or from which the jury might infer that he would in the future suffer any loss of time or earnings. Absent such evidence, it was prejudicial error to instruct the jury that it should consider whether or not the injury was permanent.

The judgment is reversed.

All the Judges concur.

BAKEWELL, Circuit Judge, sitting for LEEDOM, J., disqualified.