Luke De Legge, Appellee, v. Victor E. Karlsen, Appellant.

Gen. No. 47,215.

First District, First Division.

March 10, 1958.

Rehearing denied March 26, 1958.

Released for publication May 6, 1958.

Pretzel, Stouffer and Nolan, of Chicago (Charles D. Snewind, of counsel) for defendant-appellant.

Joe Reiff, of Chicago, for appellee.

JUSTICE ROBSON delivered the opinion of the court.

This is an appeal by defendant, Victor E. Karlsen, from a judgment in favor of plaintiff, Luke De Legge, in an action for personal injuries. Trial was had by jury. The trial court overruled defendant's post-trial

motion for arrest of judgment notwithstanding the verdict and a new trial.

Defendant's principal contentions are that the trial court erred because the verdict and judgment are against the manifest weight of the evidence, and that the trial court erred in giving one of plaintiff's instructions.

A review of the evidence reveals that the accident which caused plaintiff's injury took place on November 7, 1951, between 11:00 a. m. and 1:00 p. m. at the intersection of Fifth and Cicero avenues in Chicago, Illinois. Cicero avenue and Fifth avenue are four-lane highways. Fifth avenue runs at a right angle from the northeast to the southwest across Cicero avenue. There is a stop sign for westbound traffic on Fifth avenue at the intersection with Cicero. Approximately five feet south of Fifth avenue there is a railroad viaduct which runs east and west above Cicero avenue. The viaduct is supported by pillars, one of which is located in the center of Cicero avenue. About a block to a block and a half north of the viaduct, Cicero avenue begins a decline which reaches its lowest point at the underpass of the railroad viaduct. Cicero has a high double curb on the west edge and streetcar tracks in the center. As it reaches the viaduct at Fifth avenue it narrows to a two-lane highway. At the time of the occurrence the streets were covered with snow. It was slippery and slushy.. Fifth avenue was reduced to two lanes of traffic and so was Cicero avenue to the north of the underpass.

Testifying to the occurrence, plaintiff's witness, Edward L. McCormick, in substance, stated that just prior to the occurrence he was driving west on Fifth avenue behind defendant's car, which stopped at the stop sign for Cicero avenue. Traffic was coming from the north and as it cleared defendant pulled out to turn left and south on Cicero avenue. At the same time a truck driven by plaintiff was approaching from the

north going south on the downgrade at a speed of about twenty miles an hour. Plaintiff, when about fifty feet away, blew his horn and defendant hesitated for a second, then proceeded across the road into the southbound lane. The wheels of defendant's car started to spin on the ice and plaintiff applied his brakes and started sliding. He cut his wheels to avoid hitting defendant. Defendant's wheels stopped spinning on the ice and he proceeded on under the viaduct without stopping. Plaintiff's truck continued to slide until it went over the abutment and into a post. He pulled out and around plaintiff to follow defendant. He pursued defendant until he came to Twelfth street [Roosevelt road] where defendant slowed down. He wrote the car's license number on a sheet of paper but didn't attempt to stop him. He turned around and returned to plaintiff. He gave plaintiff the license number and told him the color of defendant's car.

Plaintiff, in substance, said that about 11:00 a. m. before the occurrence, he was driving a tractor and tank trailer, which was empty, south on Cicero avenue. As he came down the ramp that goes under the viaduct he saw defendant stop at Fifth avenue. He blew his horn. The car proceeded. Then all of a sudden the car got into the center of the street and seemed to stop. Defendant gave plaintiff the go ahead sign. Plaintiff's wheels were spinning on the ice. They must have grabbed and defendant cut in front of him. He put on his brakes in order to avoid smashing the car and skidded into the posts at the curb and stopped. McCormick came to him shortly after the accident and gave him the license number of the car. He copied it down on a piece of paper.

On cross-examination plaintiff said that there is a gas station on the west side of Cicero near Congress about a block north, or three to four hundred feet from where the accident occurred. He didn't remember if he saw defendant stopping at Fifth avenue but he

could see the intersection of Fifth avenue and Cicero. He admitted that in a deposition he stated that he had seen defendant on Fifth avenue as he passed the gas station and that he had blown his horn. Defendant moved into the intersection after he blew his horn. He was going about fifteen miles an hour. He could stop the truck with the air brakes in ten feet. He further stated on cross-examination that under the conditions then existing he could bring the empty truck to a stop within fifteen or twenty feet. He attempted to bring the truck to a halt when it was 150 feet away. His truck was sliding. The closest it came to the other car was about one foot. He didn't notice the color of it. When his truck came to a stop, it blocked the entire viaduct and no car could pass in the right lane. After the accident he pulled the truck out and drove down Cicero. He saw defendant's car parked on the other side of Roosevelt road near Cicero but didn't stop as there was no parking space.

Defendant testified that he is a lawyer; that on November 7, 1951, he worked part time as personnel director for the Brad Foote Gear Works at 1309 South Cicero avenue. He also operated a real estate and law office at 3422 West North avenue in Chicago. He lived in River Forest. He had occasion to go from his law office to the gear plant in November. He always crossed Cicero and Fifth avenue. He couldn't say definitely where he went on the morning of November 7. His recollection was that he went to his office at the plant and stayed there until his work was done, which was about 12:30 p. m., and then went to his law office on North avenue. As a lawyer, he kept a calendar and had looked at it and on that date it was a blank. He had kept the calendar but a couple of years later threw it away. He first knew that there was a claim against him in December of 1951. He had two sons who drove the car. His wife also drove the car but they had no friends in the vicinity of Cicero and Fifth

avenue that she would be visiting. He had a green Studebaker sedan but did not recall the license number. He admitted that in answer to interrogatories, which were filed in 1955, he had answered that he owned an automobile on November 7, 1951, with license number 11782-561. He usually drove a Cadillac to work. There were two other Studebakers similar to his owned by employees at the plant.

Helene Mikuzis, a witness for defendant, said she worked for the Brad Foote Gear Works in the personnel department in 1951. Defendant worked from eight o'clock in the morning to two o'clock in the afternoon. He was in the plant on November 7, 1951. She remembered because about December 23 he had talked to her about the accident and asked if he had lost any time in November. She definitely remembered that he had not lost any time because she checked the records.

Other witnesses substantiated parts of plaintiff's testimony.

As to defendant's contention that the verdict and judgment were against the manifest weight of the evidence, he alleges (1) that the finding that the Studebaker automobile allegedly involved in this occurrence was being operated by defendant, rests solely in the area of guess, surmise and suspicion; (2) that the evidence failed to establish that the driver of the Studebaker was guilty of actionable negligence, and (3) that the plaintiff was guilty of contributory negligence as a matter of law.

■■ The law is well settled in this State that a reviewing court cannot substitute its judgment for that of a jury in passing on the weight and credibility of conflicting testimony. City of Monticello v. LeCrone, 414 Ill. 550. Where the evidence is conflicting in order for a verdict to be contrary to the manifest weight of the evidence an opposite conclusion must be clearly apparent. Stone v. Guthrie, 14 Ill.App.2d 137; Bunton

v. Illinois Cent. R. Co., 15 Ill.App.2d 311; Griggas v. Clauson, 6 Ill.App.2d 412; Borst v. Langsdale, 8 Ill.App.2d 88.

On the first two points advanced by defendant under its first contention, an examination of the evidence clearly indicates substantial conflict based on plaintiff's own evidence, but we cannot say that an opposite conclusion to that of the jury was clearly apparent. We will not under such circumstances substitute our judgment for that of the jury.

As to defendant's third point, our courts have repeatedly held that contributory negligence is preeminently a question for the consideration of the jury. It becomes a question of law only when the evidence establishing due care is so clearly insufficient that all reasonable minds would of necessity reach the conclusion that there was contributory negligence. Bales v. Pennsylvania R. Co., 347 Ill. App. 466, and cases therein cited. This is a close case but we cannot say that the record is such that all reasonable minds would reach the conclusion that there was contributory negligence as a matter of law.

It is the defendant's second principal contention that the giving of the following instruction was erroneous:

"The jury is instructed that at the time and place in question there was in full force and effect a certain Statute of the State of Illinois which provided as follows:

" 'The Department may in its discretion and when traffic conditions warrant such action give preference to traffic upon any of the State Highways under its jurisdiction, upon which has been constructed a durable hard-surfaced road over traffic crossing or entering such highway by erecting appropriate stop signs or stop lights and in such case vehicles entering upon or crossing such highway shall come to a full stop as near the right-of-way line of such highway as

possible and regardless of direction shall give the right-of-way to vehicles upon such highway.'

"If the jury finds from a preponderance of the evidence and under the instructions of the court that the defendant violated said Statute, and that such violation, if any, was negligence that caused or contributed to cause the accident and injuries in question, and that before and at said time and place plaintiff was in the exercise of ordinary care for his own safety, then the jury may find the defendant guilty."

He argues that this instruction incorporates the exact words of the Uniform Traffic Act as in force at the time of the occurrence (Smith-Hurd Anno. Stat., chap. 95½, par. 167). It is a peremptory instruction which directs a verdict against the defendant if the jury finds that he failed to come to a full stop at or near the right-of-way line, or failed to give the right of way to the truck operated by plaintiff. Defendant states that it is the uncontradicted evidence that he did stop at the stop sign so that this question was not in issue. He further states that the courts of this State have modified the construction of the language of the statute on right of way after stopping at a stop sign.

The undisputed testimony of plaintiff and his witness McCormick was that defendant did come to a stop at the sign. The only question that remained pertained to right of way. On this issue plaintiff's testimony on cross-examination, particularly his admissions concerning the statements he made in a discovery deposition, reveals marked inconsistencies with his testimony on direct examination. The discrepancies are particularly apparent as to the operation and control of the truck and the distance he was from the intersection when he first observed the defendant. There are also variances between his testimony and that of his witness McCormick as to the various events before plaintiff's collision with the post.

It has long been the law that an instruction which directs a verdict, or has the effect of such direction, must inform the jury of every material question of fact in controversy. National Importing & Trading Co. v. E. A. Bear & Co., 324 Ill. 346, 359, 360; Montgomery Coal Co. v. Barringer, 218 Ill. 327, 336, 337; Kelly v. City National Bank and Trust Co., 348 Ill. App. 419. It is also the law that where the courts of review have placed a modified construction upon a statute an instruction given in the language of the statute should be framed according to that construction so as properly to inform the jury of its legal effect. Walker v. Shea-Matson Trucking Co., 344 Ill. App. 466, 472; Moran v. Gatz, 327 Ill. App. 480; Burns v. Jackson, 224 Ill. App. 519.

Anderson v. Middleton, 350 Ill. App. 59, 63, involved the identical question that we have before us. It was there held:

"As to this the general subject of right of way at intersections regardless of stop signs thus becomes pertinent, that is, after defendant's testate did stop, thus eliminating that phase of the subject, who then had the right of way as she again put her car in motion? This was a close case factually and it was important that the jury be correctly instructed. It has been held consistently that a right of way is not an absolute right and it cannot be asserted regardless of circumstances, distance, or speed."

To the same effect is Hill v. Hiles, 309 Ill. App. 321, 329.

The cases in this State are not all in complete accord on the application of the doctrine of right of way as between automobiles approaching an intersection under these circumstances. In Ritter v. Nieman, 329 Ill. App. 163, the court defined a motorist's duty to obey a stop sign as follows at p. 171:

78

"What is the purpose of a stop sign? Certainly, it does not signify that a motorist should stop, and then blindly proceed through a protected intersection without determining that he can do so with reasonable safety. The operator of a motor vehicle, when he stops at a preferred highway, should ascertain if he can proceed safely across such highway. If he can not, he should not enter it. Merely stopping some place near a stop sign does not necessarily discharge one's duty. There is no virtue in stopping at a place when one can not see. A stop sign is a challenge to motorists to stop at a point where, by the use of one's faculties, one can definitely ascertain if he can safely proceed into the protected thoroughfare."

In Little v. Gogotz, 324 Ill. App. 516, it was held:

"We believe on the question of the right of way, a reasonable construction would not require that defendant stop his car either at the stop sign or at the intersection line long enough to permit any car that he observed on the highway to pass, regardless of its distance from the intersection. [Citing Leech v. Newell, 323 Ill. App. 510.] Defendant here exercised his judgment and 'thought' there was sufficient time for him to cross the intersection. We cannot say that under the circumstances reasonable men would not differ as to whether his judgment was good or bad, therefore, it was for the jury to determine whether his judgment came up to the standard of the average man in the community."

Other statements may be found in Kearney v. Spiniola, 319 Ill. App. 251, and Sykes v. Herbener, 338 Ill. App. 20.

No Illinois case gives a precise treatment of this difficult question. The best summary is found in 164 A. L. R. 24, 25. It states:

"The conception that a motorist on a road protected by stop signs has the right of way over motorists on

intersecting subordinate streets does not mean that the latter, having stopped at the stop sign, must refrain from crossing the favored street whenever another vehicle is approaching thereon, no matter how far distant.

"Where, as is frequently the case, applicable statutes provide that, having come to a stop, a motorist approaching an intersection protected by stop signs must yield the right of way to vehicles approaching on the favored street or highway so closely as to constitute an immediate hazard, but having so yielded, may proceed across the intersection in preference to other drivers on the through thoroughfare, such enactments control, and the motorist confronted by a stop sign may, exercising reasonable care, proceed over the crossing after he has stopped and yielded the right of way to such vehicles on the through road as constituted an 'immediate hazard,' the question whether a particular vehicle constituted such a hazard in a particular case being one for the jury. A similar result is sometimes reached apart from statute or under statutes which are less explicit in their terms as to the right of a motorist on the disfavored way to proceed after he has come to a stop, the view being taken that it is the duty of such a motorist to permit traffic approaching on the through street or highway to pass over the crossing, unless he is justified, in the exercise of reasonable care, in believing that he can cross ahead of the approaching vehicle without danger of a collision."

In 1953 the legislature amended the provision of the statute in question to read as follows (Ill. Rev. Stat. 1957, ch. 95½, sec. 167 (b)):

"The driver of a vehicle shall stop as required by Section 86 of this Act at the entrance to a through highway and shall yield the right-of-way to other vehicles which have entered the intersection from said

80

through highway or which are approaching so closely on said through highway as to constitute an immediate hazard, but said driver having so yielded may proceed at such time as a safe interval occurs."

This new provision seems to be an attempt to summarize the case law in Illinois on the issue of right of way as it existed prior to its adoption.

█ A summarization of the various opinions of our court, together with the statements from A. L. R. on the question of right of way after having stopped at a stop sign on a through highway, leads us to the conclusion that the following is a fair definition: It is the duty of a vehicle after having stopped at a stop sign to yield the right of way to vehicles on the through highway which have entered the intersection, or which are approaching so closely as to constitute an immediate hazard. The vehicle having so yielded the right of way may proceed on or across the through highway when it can be reasonably ascertained it may do so without danger.

█ An examination of all the instructions given by the trial court reveals that the instruction in question was the only one given on this vital issue upon which the liability of the defendant was predicated. It was peremptory and directed a judgment for the plaintiff. It was imperative that it correctly state the law and the facts pertaining thereto. The only testimony pertaining to this point was that of plaintiff and his witness McCormick. The reading of the record reveals that it was a close issue of fact as to whether or not under all the circumstances plaintiff was exercising ordinary care. The directory part of the instruction fails to inform the jury that defendant came to a stop at the stop sign. It does not inform the jury of the modified construction placed by the courts upon the question of right of way as between automobiles. This certainly cannot be considered harmless error.

As a result of our analysis of the record, we conclude that the giving of this instruction by plaintiff was prejudicially erroneous. We are, therefore, impelled to reverse the judgment of the trial court and remand the cause for a new trial. Other questions are raised but in that the cause will be retried it is not necessary for us to pass upon them.

Judgment reversed and cause remanded with directions.

SCHWARTZ, P. J. and McCORMICK, J., concur.