JORGENSON, Respondent v. DRONEBARGER, Appellant

(143 N.W.2d 869)

(File No. 10238.  Opinion filed July 8, 1966)

**Bangs, McCullen, Butler & Foye, Thomas E. Simmons,** Rapid City, for defendant and appellant.

**Whiting, Lynn, Freiberg & Shultz, Kelton S. Lynn,** Rapid City, for plaintiff and respondent.

HOMEYER, Judge (on re-assignment).

This is an action for personal injuries arising out of an automobile accident. A jury awarded plaintiff $18,000 in damages and judgment for that amount was entered in her favor and against the defendant. Defendant's application for a new trial was denied and he appeals from the judgment.

The accident occurred shortly after 4:00 p. m. on October 12, 1963, on Interstate 90 about 1 1/2 miles east of Rapid City. At this point Interstate 90 is a limited access four-lane concrete highway with two lanes separated by a median ditch carrying eastbound traffic and two lanes for westbound traffic. The lanes are each 12 feet wide with an asphalt strip about 4 feet wide adjacent to the inside lane and another asphalt strip about 7 1/2 feet wide on the outside lane. The roadway is on a slight downgrade from a point 1/4 mile west to the place of the accident.

Defendant testified that he was on a vacation trip and had arrived in Rapid City the morning of the accident; that he was driving a pickup truck and pulling a house trailer which was 28 feet long and 8 feet wide. When leaving Rapid City he mistakenly took the Interstate going east instead of west to Wyoming, his planned destination, and after discovering the error intended to go to a turnaround which he remembered near the Air Base. He said he was traveling about 40 to 50 miles per hour in the right lane and fishtailed his trailer, a right to left movement, to observe traffic in the rear. He saw two cars coming abreast about a quarter mile behind him, and wanted to get into the left lane as he thought he was nearing the turnaround, he put on his left turn signal and gradually angled into that lane. When the truck and trailer were in the left lane, he heard a scraping noise, looked in his mirror, saw a car alongside, tried to turn away from it and about the same time heard

the sound of a horn. A collision followed in which the pickup was thrust forward and loosened from the trailer and both vehicles and the colliding car went into the median ditch. The pickup was upset and on the left, the trailer on the right, and the colliding car between the pickup and the trailer. Defendant's version of what happened was substantially corroborated by his wife.

Plaintiff is a seven-year-old girl and was riding in the back seat of a 1955 Cadillac driven by her sixteen-year-old half sister, Toni Horvath. The car belonged to her stepfather who was stationed at Ellsworth Air Force Base and they were returning to their home at the Base by driving in an easterly direction on Interstate 90.

Miss Horvath testified that she was driving at a speed of about 50 to 55 miles per hour in the left lane, and as she came over a small knoll saw the pickup and trailer either stopped or moving very slowly on the outside asphalt strip. As she approached to pass she sounded her horn and the defendant without signalling made a left-hand turn at a rather sharp angle into the left lane and towards a gravel crossover of the median which separted the eastbound from the westbound traffic. She said she slowed down as she observed the turning movement, applied her brakes, and turned left in an attempt to avoid a collision, but was unable to do so. The collision occurred on the shoulder of the left lane. Two motorists proceeding in the same direction as Miss Horvath witnessed the accident and in essence substantiated her version of what happened.

Defendant assigns as error (1) the court's refusal to give certain requested instructions, (2) the receipt of certain medical testimony, and (3) the denial of a new trial on the ground the damages awarded were excessive and apparently given under the influence of passion or prejudice.

■ The trial court gave the following instruction:

"The law of the State of South Dakota provides that the driver of any vehicle upon a highway before starting,

stopping, or turning from a direct line shall first see that such movement can be made in safety, and whenever the operation of any other vehicle may be affected by such movement, shall give a signal by means of hand and arm, or by an approved mechanical or electrical signal device, and whenever the signal is given by means of hand and arm the driver shall indicate his intention to start, stop, or turn, by the hand and arm extended horizontally to indicate a left turn, the hand and arm extended upward to indicate a right turn, and the hand and arm extended downward to indicate a stop or decrease in speed."

This instruction is substantially in the language of SDC 1960 Supp. 44.0317, but defendant strenuously argues that the court erred in giving the instruction and refusing his requested instruction which included what he claims was certain qualifying language used by this court in the case of Barnhart v. Ahlers, 79 S.D. 186, 110 N.W.2d 125. We do not believe the court erred either in giving the quoted instruction or in refusing defendant's requested instruction. In our opinion the statute is neither involved nor so worded that it cannot be readily understood by a jury of laymen.

In 53 Am.Jur., Trial, § 542, it is said:

"As a general rule where the law governing a case is expressed in a statute, the court in its charge not only may, but should, use the language of the statute, and may, indeed, be guilty of error if it employs language which constitutes a departure in an essential respect from the statute. However, it is not error to qualify the wording of the statute so as to conform it to construction given by the reviewing courts." See annotation 87 A.L.R.2d p. 544.

Contentions similar to those made by the defendant were advanced in Field v. Gregory, 230 S.C. 39, 94 S.E.2d 15, an intersection case, where the court instructed in the language of the statute and refused to instruct as to the relative duties of the

drivers under decisions of the court. The South Carolina court said: "The particular complaint of the appellants is that the Court failed to explain as to what 'entering an intersection at approximately the same time' meant. It is well settled that words used in a statute must be given their ordinary and popular signification, unless there is something in the statute requiring a different interpretation. There are no words used in the statute that have any unusual legal meaning. When the Judge charged the jury in the language of the statute, this was sufficient in this particular case."

We have carefully reviewed the Barnhart case on which defendant relies. We do not believe what was there said mandates the qualifying language contained in defendant's requested instruction or makes its omission from an instruction in the language of the statute fatal so as to necessitate a reversal. Correct legal principles are stated in Barnhart and had the trial court so chosen, it might have amplified the statutory language by adverting to such principles, but we are satisfied the court committed no error when it refused to do so. It is not error to refuse to amplify the instructions given which substantially cover the principle embodied in requested instructions. Peters v. Hoisington, 72 S.D. 542, 37 N.W.2d 410.

In Barnhart plaintiff made a lefthand turn in the middle of a block on a city street towards a private driveway into a cemetery in the face of an oncoming automobile driven by the defendant. The case was submitted to the jury on negligence and causation instructions with a verdict being rendered for plaintiff, which the trial court set aside on a motion for judgment n. o. v. The majority of the court concluded the verdict could be sustained under the comparative negligence statute and reinstated the verdict. Significantly, the court conceded plaintiff's contributory negligence when he made the lefthand turn under the circumstances there present.

We are unable to read into the words of the statute, i. e., "shall first see that such movement can be made in safety", a connotation that a lefthand turn is "prohibited unless it can be made in absolute safety and free from all danger". Still, it

is a "dangerous movement". Flanagan v. Slattery, 74 S.D. 92, 49 N.W.2d 27. Both of these statements appear in the Barnhart case. The trial court may well have felt that simply instructing in the words of the statute was the least likely to confuse. There is always the chance of a trial court committing error through overemphasis because instructions should not give undue emphasis to any phase of the case favorable to either side and even correct statements of law if unduly emphasized may constitute reversible error. Miller v. Town of Ankeny, 253 Iowa 1055, 114 N.W.2d 910.

In Mills v. Southwest Builders, Inc., 70 N.M. 407, 374 P.2d 289, under facts quite similar to the present case, the court instructed:

"16. I further instruct you that it was the duty of the driver of the truck in this case before turning such vehicle from Solano Drive to the left, to first see that such movement could be made in safety and, if it could not be made in safety, then it was his duty to wait until he could make such turn in safety."

New Mexico has a statute, N.M.S.A. 1953, § 64-18-24(a) which provides: "No person shall * * * turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety. * *" The court said: "Except for the omission of the word 'reasonable' before the word 'safety' we see nothing wrong in the law as set forth in this instruction, when considered along with instruction 13 * * * (turning without giving a signal), and the omission of the one word was neither fatal nor prejudicial, in our view. Likewise, it was not the basis for appellants' objection."

We are aware that some courts in states with statutes similar, or substantially similar, to our statute have reversed trial courts for failing to instruct in the manner requested by the defendant. Nevertheless, in our opinion, the failure to give the instruction as requested under the circumstances of this case was "neither fatal nor prejudicial".

220

■ Defendant requested and the court refused to give the following instruction:

"You are instructed that it is the duty of the driver of any vehicle using a public street or highway to exercise reasonable care to avoid placing said driver or another person in danger; to use like care to avoid an accident from which injury might result; to be vigilant at all times, keeping a lookout for traffic and other conditions to be reasonably anticipated; and to keep his or her vehicle under such control that, to avoid a collision with any person or with any other object, he or she can stop as quickly as might be required by eventualities that would be anticipated by an ordinarily prudent driver in like position."

We perceive no error. The court gave a general negligence instruction in the following form:

"Negligence is the doing of something which an ordinarily careful and prudent person, under like circumstances, would not do, or the failure to do something which an ordinarily careful and prudent person, under like circumstances, would do. Negligence imports a want of such attention to the natural or probable consequences of an act or omission as a prudent man ordinarily bestows in acting in his own concerns."

It also gave an instruction on proximate cause, defined it, and informed the jury that plaintiff could only recover damages proximately caused by the negligence of the defendant. The proposed instruction in substance was taken from the California Jury Instructions and we note it is no longer recommended. Note on Instruction, 201F, B.A.J.I., Vol. 2, 4th Ed., p. 20, (pocket parts). In Dayton v. Landon, 192 Cal.App.2d 739, 13 Cal.Rptr. 703, the court said: "The proposed instruction contained merely the statement of a commonplace familiar to all. Cf. Estate of Nutt, 181 Cal. 522, 529, 185 P. 393."

■ The instructions must be considered as a whole and when thus considered we are of the opinion that they give a

full and correct statement of the applicable law. Dwyer v. Christensen, 77 S.D. 381, 92 N.W.2d 199.

Plaintiff's injuries consisted of a clinical fracture of her left arm near the elbow joint. When it did not respond to treatment by conservative immobilization, a surgical open reduction was performed three days later and a pin inserted. The incision remained open for six days to lessen the possibility of a claw hand developing. Splints and a half cast were then applied and worn until November 7th followed by physical therapy. Plaintiff was hospitalized for 13 days after the accident. On January 13, 1964, the pin was removed under a general anesthetic and she was again hospitalized for two days. The injuries and treatment were painful and the child was very sensitive to pain. As the result of the operative procedures plaintiff has two scars, one of which is keloid, approximately four inches long and one-fourth inch wide which are unsightly and permanent. Her orthopedist, Dr. Ahrlin, expressed an opinion that she sustained a 15% permanent partial disability in her left forearm on the basis of such scars.

Depositions were taken from Drs. Anderson and Buchman, air base doctors who treated plaintiff, and were read at the time of the trial. Dr. Anderson testifed that post-traumatic arthritis sometimes results from an injury of this type, but refused to give an opinion based on reasonable medical certainty that it would or would not result. A motion to strike this testimony was denied. He also said in a child of the age of plaintiff, such fracture generally causes accelerated bone growth. Dr. Buchman also testified to accelerated bone growth resulting from fractures in children of tender years, but refused to express an opinion thereon with reasonable medical certainty as to plaintiff. No objection was made to the latter testimony until the conclusion of cross-examination when a motion to strike was denied.

■■ The rule is well settled in this state to warrant an instruction and to sustain a recovery for future damages, the future effect of the injury, and either its permanency or duration, if not permanent, must be shown with reasonable certainty. SDC 1960 Supp. 37.1702; Peters v. Hoisington, 72 S.D. 542,

37 N.W.2d 410; McGovern v. Murray Taxi Co., 75 S.D. 151, 60 N.W.2d 211; Klein v. Hodgman & Sons, Inc., 77 S.D. 64, 85 N.W.2d 289. We are satisfied the court paid homage to this well established rule when it specifically limited plaintiff's recovery for future damages to the scars where the permanency of injury was established by competent testimony. By so instructing the court in effect ruled from jury consideration so far as future damages are concerned the items complained of. These medical witnesses carefully limited their prognoses of the consequences of the injury and the trial record does not support defendant's contentions that the receipt of this testimony or the refusal to strike it on motion after its receipt was prejudicial.

▬▬▬ Lastly, defendant contends the court erred in refusing a new trial because the damages awarded are excessive and appear to have been given under the influence of passion or prejudice. The verdict is generous, but we do not feel justified in disturbing it. We have repeatedly said the trial court is clothed with a latitude of discretion and having participated in the original proceedings is in a better position than we to sense passion and prejudice. Consequently, as a court of review we are reluctant to interfere with a jury's award of damages and the trial court's approval thereof. Weidner v. Lineback, 82 S.D. 8, 140 N.W.2d 597. We also bear in mind the reduced purchasing value of the dollar. Ross v. Foss, 77 S.D. 358, 92 N.W.2d 147. We cannot say the trial court erred when it denied defendant's motion for a new trial.

Affirmed.

ROBERTS and HANSON, JJ., concur.

RENTTO, P. J., dissents.

BIEGELMEIER, J., concurs in dissent.

RENTTO, Presiding Judge (dissenting).

It is the duty of the court to instruct the jury as to the law of the case, SDC 1960 Supp. 33.1317. This should be done in such manner that the controlling principles are made clear to

the jury. The obligation of the jury is to accept the same and give·effect thereto. This duty, purpose, and obligation are not fulfilled, if the instructions are so deficient or unclear that the jury is required to speculate as to what the applicable law is.

It is probably true that one possessed of legal training could read the challenged instruction and discern therefrom that it should be considered in connection with the broader rule requiring due care generally. But it seems to me that the ordinary juror from reading it would conclude that it required something more than due care of the motorist turning from a direct line. To this extent it is ambiguous.

The phrase "shall first see that such movement can be made in safety" could easily and rationally be understood to place on such person an absolute rather than a relative duty. In other words, that he makes the turn at his peril. Our opinion in Barnhart v. Ahlers, 79 S.D. 186, 110 N.W.2d 125, points up the existence of this possibility. Courts in other states, before and after Barnhart, under similar statutes show a like recognition of this danger. Typical of these are Ruperto v. Thomas, 113 Cal.App. 523, 298 P. 851 and Ray v. Anderson, Or., 403 P.2d 372.

In the Barnhart case this court for the first time had occasion to say exactly what conduct SDC 1960 Supp. 44.0317 required of the motorist who was turning his vehicle from a direct line. While an instruction was not involved it is nevertheless our interpretation of the statute. In accord with the construction generally placed on such statutes we made clear that it did not put on him an absolute duty, but required only that he exercise due care under the circumstances to see that the turning movement can be made with reasonable safety to himself and others. This meaning of the statute differs markedly from what the ordinary person would be likely to conclude that it meant.

I think the court erred in instructing the jury in the language of the statute without advising it of the construction this court had placed on that statute in the Barnhart case. The rule of law which seems to me here applicable was stated in De Legge v. Karlsen, 17 Ill.App.2d 69, 149 N.E.2d 491 in this language:

"where the courts of review have placed a modified construction upon a statute an instruction given in the language of the statute should be framed according to that construction so as properly to inform the jury of its legal effect." Otherwise it is apt to mislead the jury. See also Louisville and N.R. Co. v. Patterson, 75 Ga.App. 11, 42 S.E.2d 171. Clearly the instructions here given did not do that. The language here used and that used by the courts quoted is limited to the resulting construction of a statute by a court and is differentiated from general language or expression used in opinions. See Roth v. Jelden, 80 S.D. 40, 47, 118 N.W.2d 20, 24.

The court's charge here left each juror free to indulge his own construction of the statute and apply that as the standard of conduct to which the defendant should have conformed under the circumstances he related. For this the judgment should be reversed.

Under a statute similar to ours the question here presented was before the court in Smith v. Clark, 187 Va. 181, 46 S.E.2d 21. It is there written:

"This court has therefore interpreted this language, 'first see that such movement can be made in safety', to mean that it is incumbent upon the driver to use reasonable and ordinary care under the circumstances to see that such movement can be made safely.

"The language of the Code section is however susceptible of a construction that would impose upon the driver a higher degree than reasonable care. It could easily be interpreted by a jury as requiring an absolute duty to negotiate the turn without mishap. To guard against this construction, the court has determined that any instruction using the words of the statute, namely, 'first see that such movement can be made in safety', must be qualified with appropriate language relieving the driver of the burden of insuring the safety of his turn."

In that case it was also urged that another instruction to the effect that the operator of the turning car was required to exer-

cise only reasonable and ordinary care cured the vice in the instruction on the turning statute. This the court rejected and reversed a judgment for the plaintiff saying: "When, how, and in what manner this movement was made was the factual crux of the case. That the jury be correctly instructed thereon was vital and of material importance."

I am unable to read Mills v. Southwest Builders, Inc., 70 N.M. 407, 374 P.2d 289, as supporting the position of the majority. The court there was not concerned with failure to instruct as to a modified construction placed on the statute by a reviewing court. Rather, the instruction there merely omitted the word "reasonable" appearing in the statute—an omission apparently not called to the attention of the trial court.

A California statute, very much like the New Mexico statute, was involved in Lewis v. Franklin, 161 Cal.App.2d 177, 326 P.2d 625. The court there found prejudicial error in an instruction on the statute because it did not use the word "reasonable", and thereby imposed on the driver of the turning vehicle a duty greater than that imposed by the law—the duty of reasonable care under the circumstances. The Lewis case further indicates the language of their turning statute should not be given in an instruction without making clear to the jury that the driver of the turning vehicle is not required to know that the turn can be made with safety, but only that he must exercise reasonable care.

Accordingly, I am compelled to dissent. I am authorized to state that BIEGELMEIER, J., concurs in this dissent.