STATE OF SOUTH DAKOTA, Respondent, v. EGBERT, Appellant.

(258 N. W. 283.)

(File No. 7562.   Opinion filed January 4, 1935.)

E. B. Harkin, F. W. Noll, and *Williamson, Smith & Williamson*, all of Aberdeen, for Appellant.

*Walter Conway*, Attorney General, *James Brown*, Assistant Attorney General, *H. O. Hepperle*, of Aberdeen, and *P. C. Morrison*, of Mobridge, for the State.

RUDOLPH, J.   The defendant, Egbert, was indicted for obtaining money under false pretenses from Brown county in connection with the same bridges which constituted the basis for the charges against one Herman Pickus.   The charges against Pickus were considered by this court in the case of State v. Pickus, 63 S. D. 209, 257 N. W. 284, 289.   The indictment in this case, as in the Pickus Case, was returned against this defendant on September 3, 1931, in six counts; each count having relation to a different bridge.   As in the Pickus Case, so also in this case, the court advised a verdict upon counts 4 and 5 because the crimes therein charged, if in fact committed, had been committed more than three years prior to the filing of the indictment, the jury returned a verdict of not guilty on counts 1, 3, and 6 of its own motion, and a verdict of guilty on count 2.   Count 2 of the indictment related to the same bridge as did the count 2 in the Pickus Case, and is as follows:

"And the Grand Jurors aforesaid, upon their oaths aforesaid, in the name and by the authority of the State of South Dakota, do further present:

"That on the 10th day of April, 1928, a contract was entered into between the County of Brown and H. Pickus Construction Company, a co-partnership composed of Herman Pickus, who usually writes his name H. Pickus and M. Skalovsky, for the construction of a bridge on Section Five (5), Township One Hundred Twenty Seven (127), North, Range Sixty-Five (65), West of the Fifth Principal Meridian, in said Brown County, in the construction of which bridge a certain amount of concrete and steel was necessary and was prescribed in the specifications and contract therefor.   That the Class A concrete to be used in said bridge was to be paid for at the rate of Twenty-Three and no/100 ($23.00)

Dollars per cubic yard, and that the Class D concrete to be used in said bridge was to be paid for at the rate of Twenty and no/100 ($20.00) Dollars per cubic yard. That the said Herman Pickus on the 7th day of November, 1928, at and in the County of Brown and State of South Dakota, designedly and with intent to cheat and defraud the said County of Brown, did present to and file with the County Auditor of said Brown County, a final account and verified claim in writing in the name of and in behalf of the said H. Pickus Construction Company, in which the said Herman Pickus did falsely and fraudulently represent and state that the said H. Pickus Construction Company used in the construction of said bridge Ninety-two and 7/10 (92.7) cubic yards of Class A concrete at the price of Twenty-Three and no/100 ($23.00) Dollars per cubic yard, and Twenty-Four and 3/10 (24.3) cubic yards of Class D concrete at the price of Twenty and no/100 ($20.00) Dollars per cubic yard, whereas in truth and in fact, as the said Herman Pickus at the time well knew, there was used in the construction of said bridge not more than Fifty-Nine and 3/10 (59.3) cubic yards of Class A concrete and not more than Seventeen and 7/10 (17.7) yards of Class D concrete. That in said final account and claim said Herman Pickus falsely and fraudulently represented and stated that there was used in said bridge Forty Two Thousand Six Hundred Eighty-eight (42,688) pounds of structural steel to be paid for at the rate of Six and Three Fourths Cents (6¾c) a pound, whereas in truth and in fact, as the said Herman Pickus at the time well know, there was used in said bridge not more than Thirty-Eight Thousand Seven Hundred (38,700) pounds of structural steel. That at all times herein referred to, the defendant, Paul S. Egbert, was the legally appointed and acting County Engineer of said Brown County, employed as such by said County. That it was part of his duty as such Engineer to check, and certify and approve, or disapprove, all claims of contractors for work done and for materials used in the construction of bridges built for said County, and to keep a detailed, accurate and truthful account of the amount and kind of materials used in the construction of each of such bridges, and to examine and approve or disapprove of the accounts presented by all contractors for the construction of such bridges and to truthfully and accurately check and verify said accounts and to endorse thereon his approval or disapproval before

such accounts were presented to the County Commissioners for action thereon. That said defendant, Paul S. Egbert, at and in the County of Brown in the State of South Dakota, on the 1st day of November, 1928, well knowing that the aforesaid final account and claim of H. Pickus Construction Company was excessive, false and fraudulent, did designedly and with intent to cheat and defraud said County of Brown, write and endorse on said account the letters and words 'O. K.' 'Paul S. Egbert.' That thereafter said account, so endorsed and approved by said Paul S. Egbert, was presented by said H. Pickus Construction Company to the Board of County Commissioners of said Brown County for action thereon, and said Board, believing that said claim was just and true and relying on the enforcement and approval thereof by the defendant, Paul S. Egbert, allowed said claim and caused to be paid to said H. Pickus Construction Company the sum of Eleven Hundred Sixty-five and 39/100 ($1,165.39) Dollars more than was due for the construction of said bridge, and said Paul S. Egbert thereby procured and obtained for said H. Pickus Construction Company from said Brown County on November 8, 1928, the sum of Eleven Hundred Sixty-five and 39/100 ($1,165.39) Dollars by false pretenses of said Paul S. Egbert, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of South Dakota."

The same grand jury that returned the indictment in the Pickus Case returned the indictment in this case, and a motion to quash the indictment was made based upon the same grounds as the motion in the Pickus Case. What we said concerning the indictment in the Pickus Case governs here, and it follows that we hold the indictment valid.

The statutory basis for this prosecution is section 4249, R. C. 1919, which is a follows: "Every person who designedly, by color or aid of any false token or writing, or other false pretenses, obtains the signature of any person to any written instrument, or obtains from any person any money or property, is punishable," etc. We held in the Pickus Case that the "element of scienter, the willful and corrupt mind," is of the essence of the crime defined by the above statute, and an instruction to the jury that "making a statement that is in fact false recklessly without information to justify a belief in its truth is equivalent to making a

statement knowing it to be false" was error. However, in this case, which was tried immediately following the Pickus Case, the trial court interpreted the above statute as it has now been interpreted by this court in the Pickus Case, and instructed the jury, after informing them that a pretense to come within the above statute must be knowingly false, as follows: " * * * But the Jury is not permitted to infer that he (the defendant) has such knowledge merely from the fact that he acted negligently or without ordinary business prudence in his dealings with Brown County." It is apparent, therefore, that the question which determined the result of the Pickus Case in this court is not before us in this case.

■■ We come now to the assignment of error, which questions the sufficiency of the evidence to sustain a finding by the jury that the defendant, Egbert, knowingly made a false pretense within the meaning of the statutory prohibition. There is no direct evidence that Egbert knew that the claim which was presented to the county and bore the indorsement, "O. K., Paul S. Egbert," was in fact false. The finding of knowledge can only be sustained upon the basis that certain circumstances were proved from which knowledge might be inferred. In other words, the only basis for the finding that Egbert knew that the claim, as presented, was in fact false is circumstantial evidence. In this connection the court instructed the jury, in part, as follows: "However, before you can justly find that the defendant had such knowledge or design, based upon circumstantial evidence, the circumstances must appeal to your mind as being so complete and satisfying as to exclude every other reasonable theory or hypothesis beyond a reasonable doubt. The circumstances to so satisfy your mind must be consistent with each other, consistent with the hypothesis that defendant had such guilty knowledge, and at the same time inconsistent with every reasonable and rational hypothesis that the defendant made the representations innocently and in good faith." This instruction became the law of the case, and the evidence must, therefore, be reviewed in the light of this instruction. Count 2 of the indictment generally sets forth the nature of the alleged acts on behalf of this defendant which, it is alleged, constitute the crime for which he was convicted. Count 2 contains the allegation that "Paul S. Egbert, was the legally appointed and acting County Engineer of said

Brown County, employed as such by said County. That it was part of his duty as such Engineer to check, and certify and approve, or disapprove, all claims of contractors for work done and for materials used in the construction of bridges built for said County, and to keep a detailed, accurate and truthful account of the amount and kind of materials used in the construction of each of such bridges, and to examine and approve or disapprove of the accounts presented by all contractors for the construction of such bridges and to truthfully and accurately check and verify said accounts and to endorse thereon his approval or disapproval before such accounts were presented to the County Commissioners for action thereon." In connection with this allegation in the indictment we are met at the outset with the difficulty that the undisputed evidence in this record establishes that it was not a part of Egbert's duties to know of his own personal knowledge the material or the amount of material that went into the construction of this bridge. Two members of the board of county commissioners testified in this case. F. H. Barnard, one of the county commissioners testified: "He (Egbert) was not required by the Board of County Commissioners or ordered by the Board of County Commissioners to act as an inspector and to check materials at the bridge as it went into the bridge. That was never expected of him by the Board. During the time that I was Commissioner, Mr. Egbert asked the Board in my presence to furnish him with inspectors on bridge work. He suggested having inspectors on more than one occasion. About once a year it was talked over. The Board figured the cost didn't warrant the employing of an inspector."

Mr. C. W. Freeman, the other member of the board who was a witness testified:

"Q. Mr. Freeman did you expect Paul Egbert to know exactly what cement went into each structure or into each project of his own personal knowledge? A. I couldn't expect him to be on all of those jobs and check every one of them.

"Q. Did you expect that he would ignore all the work you had given him and go to any one of these structures and watch what cement was poured or what pilings were driven? A. No, I couldn't expect him to do that.

"Q. Did you expect him to do that? A. No, sir.

"Q. Was it within the contemplation of his contract with the commissioners that he should do it? A. Not personally.

"Q. You say you didn't expect him to do this personally, you mean you expected him to get his knowledge of what was in the various structures from records, Mr. Freeman? A. I don't see how he could get it any other way."

It appears, therefore, that it was no part of Egbert's duties to know of his own personal knowledge the materials that went into the bridge. Had it been a part of his duties to have such personal knowledge, his acts would, no doubt, bear a different construction than they do when no such duty rests upon him.

Egbert testified that he had no actual knowledge of any alleged shortage, and that he placed the "O. K., Paul S. Egbert" upon the claim he presented to the county commissioners relying upon a written statement, known in the evidence as Exhibit 5 and signed by one Max Dorf, the foreman in charge of the construction of the bridge, in which written statement the materials and the amount thereof that went into the construction of this bridge were set out in detail. There is no dispute in the evidence but that Max Dorf did, in fact, furnish to Egbert this Exhibit 5 prior to Egbert placing on the claim the "O. K., Paul S. Egbert." The question arises, under the instructions of the court, whether this claim on behalf of Egbert is a "reasonable theory or hypothesis." Had it been Egbert's duty to have had personal knowledge of the contents of the bridge, it might fairly be said that any such claim, as he is now making, would not be reasonable. But, in view of the fact that it is established that it was no part of Egbert's duties to personally observe or know what material went into the bridge, and that the commissioners only expected him, as testified to by Mr. Freeman, to get his knowledge of what was in the bridge from records, we can come to no other conclusion than that this claim of Egbert was a reasonable claim and such a claim as under the instructions must have been overcome by circumstances inconsistent with it.

We are not, in this opinion, going to attempt to review the circumstances which, it is claimed, establish a guilty knowledge on the part of Egbert, and which, it is further claimed are inconsistent with Egbert's claim that he relied upon the statement of Max Dorf, the foreman, and had no guilty knowledge. True, a number of

these circumstances might point to a guilty knowledge on the part of Egbert and are consistent with the claim of the state that the defendant had such guilty knowledge, but, under the law established in this case, this is not sufficient. The jury must go further and find that the circumstances relied upon cannot be reconciled with Egbert's claim that he had no such guilty knowledge. It appears to us that many of the circumstances upon which the state relies are consistent with this claim of Egbert when viewed in the light of his acknowledged duties. Whether the circumstances when considered together make a picture which might be found by the jury to be inconsistent with this claim of Egbert, we express no opinion; sufficient to say is that, in our opinion, the circumstances relied upon are denied much of their probative value by reason of the fact that it was no part of Egbert's duties to know of his own knowledge the materials that went into the construction of the bridge. It should be further observed that there is an entire absence in this record of any showing that Egbert was benefited in any manner by reason of the alleged false claims being filed with the county. Egbert received no money directly from the county by reason of these claims being filed, and any belief that he received any money indirectly or benefited thereby must be based entirely upon conjecture and guess. We are, therefore, of the opinion that the statement of this court in the case of State v. Jacobs, 26 S. D. 183, 128 N. W. 162, quoted with approval in the case of State v. Ferguson, 48 S. D. 346, 204 N. W. 652, 657, is again applicable. The statement referred to is as follows: "It is enough to observe that the case was one demanding the utmost care in the introduction of evidence and the instruction of the jury."

■ There was introduced and received in evidence in this case the ledger sheets of the defendant's bank account for the years 1923, 1924, 1925, 1928, and 1929, and also bank deposit slips showing bank deposits of the defendant for the same years. The bulk of this evidence is somewhat indicated by the fact that it took some one hundred fifty pages of the printed record to set forth the content of these exhibits, and in this printed record many of the exhibits are grouped and referred to in a single paragraph. This whole mass of material was submitted to the jury. It is apparently the theory of the state that this bank account of the defendant over this period of years showed that the defendant was depositing more

money than he received as income from salary from Brown county, and that by reason thereof a burden was cast upon the defendant to account for each item and to prove that he did not get the money involved in such item for having made the false pretense charged in the indictment. The state relies on the case of Commonwealth v. Mulrey, 170 Mass. 103, 49 N. E. 91, 94. The defendant in that case was a teaming clerk in the employment of the city, and made an alleged false return to the city of the amount due a certain contractor. There was admitted and received in evidence "deposits of money by Mulrey (the defendant), between the dates of the first and last payment made to Finneran (the contractor), of an amount much too large to be accounted for by his salary." The court held this evidence admissible, but the very important distinction between the evidence in that case and the evidence in this case is that in the Massachusetts case the evidence was limited to deposits "between the date of the first and last payment made to Finneran." In other words, the evidence was limited to the time covered by the alleged false returns. In this the evidence related to a time commencing more than five years prior to the occurrence of the facts alleged in the indictment. If the bank account of this defendant at a time so remote as five years prior to the occurrence of any fact alleged in the indictment might be introduced and received in evidence and considered by the jury, it might as well be urged that his bank account of ten years or even twenty years prior could be introduced and the defendant compelled to explain the items therein contained or be subjected to some presumption of having acted fraudulently with respect to the matters contained in the indictment. It seems obvious to us that this evidence was inadmissible and prejudicial. After the introduction thereof, the trial, so far as this defendant was concerned, largely resolved itself into an explanation of the many different items contained in this account. As would be expected, many and various collateral issues became injected into the lawsuit, and approximately half of the direct testimony of the defendant, as indicated by the printed abstract, was devoted to an explanation of the many and various items contained in these bank deposits. It is contended by the state that the bank account during the year 1925 shows some financial transactions between Herman Pickus of the Pickus Construction Company and this defendant.

It seems to us apparent that evidence of a financial transaction between the defendant and Pickus, more than three years prior to the time involved in the indictment would form no basis other than a speculation and a guess upon which a jury might find that Egbert made a false pretense to Brown county concerning claims for bridges which were built by Pickus in 1928. We think it obvious that the introduction of this evidence was error, and that the error was of such a nature that it cannot be said that it was not prejudicial to the rights of this defendant.

█ █ The last witness offered by the state was a witness by the name of John Schnerle. Schnerle testified that he was in the gravel business in Aberdeen; that in March, 1928, he met Frank Dean, one of the county commissioners, in front of the municipal building in the city of Aberdeen; that he walked with Dean to the courthouse; that the witness saw Dean walk into the inner room of the highway department office; that he also saw Herman Pickus walk into the same room; that, after Mr. Dean went in he closed the door; that the witness went to the door and listened and heard Dean say, "Hello, Paul," and the witness knew the voice that returned this salutation to be the voice of Paul Egbert, this defendant; that thereupon Mr. Dean said: "I wonder what that Schnerle is sticking around here for again. That son-of-a-bitch never puts out. He will never get a job." This evidence was all objected to by the defendant, and after it was received a motion was made to have it stricken. The court, after hearing arguments of counsel, ordered the evidence stricken, and instructed the jury as follows: "Gentlemen, you will not pay any attention at all to the evidence of the last witness or to any statement he may have testified that he heard someone make." We are of the opinion that the trial court correctly decided in granting the motion to strike that this evidence was not material and had no connection whatever with the issues of this case. It was seemingly an apparent attempt to involve in some manner and discredit the commissioner Dean, and entirely collateral to any issue involved in this case. However, we are of the opinion that the prejudice incurred by reason of the introduction of this evidence was not obviated or overcome by striking it from the record. The evidence was such that it might naturally tend to affect the prejudices or feeling of the jury, and we do not believe that any statement by the court to

the effect that the evidence was withdrawn from the jury's consideration could remove from the minds of the jury the impression made at the time the evidence was admitted. Where evidence improperly admitted has created prejudice, which in the opinion of this court is not removed by the subsequent withdrawal of the evidence from the consideration of the jury, this is error upon which the judgment will be reversed. Crisp v. State Bank of Rolla, 32 N. D. 263, 155 N. W. 78; State v. Yates, 99 Minn. 461, 109 N. W. 1070.

The judgment and order appealed from are reversed.

ROBERTS, P. J., and CAMPBELL and WARREN, JJ., concur.

POLLEY, J. (concurring specially). I concur in the reversal of the judgment in this case on the ground set out in the opinion of Judge RUDOLPH; but the indictment in this case was returned by the same grand jury that returned the Pickus Case (State v. Pickus, 63 S. D. 209, 257 N. W. 284), and for the reasons stated in my concurring opinion in that case I think the judgment ought to be reversed and the indictment dismissed.