STATE of North Dakota, Plaintiff
and Respondent,

v.

Raynold J. SCHLITTENHARDT, Defendant
and Appellant.

Cr. No. 335.

Supreme Court of North Dakota.

Dec. 19, 1966.

Helgi Johanneson, Atty. Gen., and Albert A. Wolf, State's Atty., of Burleigh County, Bismarck, for plaintiff and respondent.

Conmy, Conmy, Rosenberg & Lucas, Bismarck, for defendant and appellant.

MURRAY, Judge.

Defendant was convicted in the District Court of Burleigh County of the crime of attempting to take indecent liberties.

Subsequent to conviction, he moved for a new trial and has now appealed to this court from the order denying motion for new trial. Among the grounds for said motion for new trial was the order of the district court denying motion for mistrial.

Defense counsel moved initially, in the alternative, during the trial, for mistrial, for an order to strike certain matters from the record, and for an admonition to the jury. At a subsequent time, after the district court had denied the motion for mistrial but had admonished the jury and ordered these matters stricken from the record, defense counsel twice renewed his motion for mistrial. The propriety of the trial court's order denying motion for mistrial is the serious question before us.

In determining the validity of a judgment in a criminal action the entire record will be searched and all parts of the record interpreted together. A deficiency in one place may be cured by what appears in another. Davidson v. Nygaard, 78 N.D. 141, 48 N.W.2d 578.

As we said in *Davidson*, we treat these matters together and, accordingly, regard the subsequent renewals of motion as being motions for mistrial, not in the alternative,

and an indication by the defendant that he was not satisfied with the admonition and striking alone.

The nature of the evidence objected to was the reference in the testimony of a Bismarck police detective, Joseph E. Meier, concerning the use in identification of the defendant, in interviewing the complaining witness, of a red-lettered book entitled "Known Criminals" "Detective Bureau".

In order to understand this properly, we quote from the pertinent parts of the testimony of Dectective Joseph E. Meier of the Bismarck Police Department. For obvious reasons the last name of the young boy witness, who is the complainant, is omitted, and he is referred to herein as "Richard".

Q. And did you attempt to identify the individual involved when you talked to him?

A. Yes, sir, I did.

Q. And what procedures did you use to identify or to determine the identity of this individual?

A. We have a book containing photographs of known criminals and we used this as an investigation aid. We have people look through these books until they find the subject in the book if it is there.

Q. Was that procedure used in this case?

A. Yes, sir.

Q. And do you have that book with you here?

A. Yes.

Q. Will you tell us whether the defendant—excuse me—whether the plaintiff, Richard * * *, whether this boy identified a photograph in that book?

A. Yes, he did.

Q. And did he do this by paging through the portions of the book?

A. Yes, sir.

Q. Would you now open the book and remove therefrom the page which he identified, the picture which he identified?

At this point the court retired to chambers at the request of defense counsel, with both counsel present. Quoting further from the transcript:

MR. ROSENBERG: Your Honor, at this time the defendant makes the following motion upon the following grounds: During the testimony heard from the police officer, Detective Meier, the reference was made to the fact that this book that he was referring to was a book labeled as "Known Criminals" and I realize at the time the motion was not made to the Court at that time because of the inflammatory nature of the type of book and we feel this is a back-handed way of getting into evidence concerning prior convictions and at this time and upon those grounds, we move that the defendant be granted a mistrial or in the alternative that this part of the testimony be stricken from the record or that the jury be admonished. There was a reference to photographs, but it's also a back-handed way of somehow labeling this particular defendant with having prior convictions which in my opinion at this particular time is not admissible.

MR. WOLF: Your Honor, I don't remember the specific terminology used by the officer. He was making reference to a book which contains the photographs of various people and I think this is a normal way of presenting evidence of identification having been made in that you must show there were other pictures other than those of the defendant in order to establish identification having been made by a victim or any witness and this is what we were doing in presenting the entire book to show there were other pictures contained therein and he selected the picture of the defendant to establish the identity of the defendant immediately after, a day or two after the incident took place.

MR. ROSENBERG: As the Court will recall, in red lettering appearing on the front of this particular book is the words "Known Criminals" and I don't feel that an admonition to this jury concerning this particular evidence will be satisfactory. I feel that this is an area that is highly inflammatory and I feel it is grounds to ask this Court that a mistrial be granted based upon the reference to this particular book and the use of the same upon the witness stand.

MR. WOLF: Well, Your Honor, I think the question is whether or not certain evidence is admissible and when you have to resort to the presentation of that evidence by the use of records, I think this is completely proper and I think the use of police records to establish identity has been commonly accepted by the Courts. This is in many cases one of the most (sic) aspects of lawsuits and perhaps one of the most important ways of identifying individuals who are accused of a crime and it is for that reason the book was used and in order to relate the exact procedure used in order to arrive at the identification of the defendant and therefore the procedure which followed in the course of charging him with the offense and arresting him.

It will be noted, in connection with the timeliness of defense counsel's objection, that he did not object to the original question, and therefore the issue of timeliness has arisen. The fact is, to be practical, that the question was a completely proper one, involving procedures used to identify, and defense counsel could not have known what a prejudicial answer was going to emerge, however innocently, from this witness.

A very recent Minnesota case states the law with clarity and refers to appropriate United States Supreme Court authority of recent origin on this question. State v. Huffstutler, 269 Minn. 153, 130 N.W.2d 347.

In the Minnesota case, as in this case, the question of the prosecutor was not objectionable, but the answer of the witness was the damaging factor. We quote from the Minnesota court, because the situation is so much in point with instant case. State v. Huffstutler, 130 N.W.2d 347, at pages 348, 349:

Unlike the cases cited where the prejudice was created by the improper question of the prosecutor, the damage in the case before us lies in the *low blow* contributed by the answer. The fact that the prejudicial information was volunteered by the witness does not render it less harmful to defendant. *The prejudicial testimony came from the state's witness, a public official, and the prosecution is entirely responsible for its presence in the record.* Ulmer v. State, 106 Tex.Cr.R. 349, 292 S.W. 245; People v. Robinson, 273 N.Y. 438, 8 N.E.2d 25.

It is true that the trial court instructed the jury to disregard the prejudicial statement, but we do not think that that admonition was sufficient to repair the damage. In State v. Reardon, 245 Minn. 509, 513, 73 N.W.2d 192, 194, we said:

"It is well recognized that mistakes occur in most trials and, where they do not substantially affect the rights of the parties, it may be expected that the trial court by proper instruction can rely upon the intelligence and restraint of a jury to disregard them. Where, however, the impact of the prejudicial remark may be such as to impart to the minds of the jury substantial prejudicial evidence not properly a part of the case, it is taking too much for granted to say its effect can be removed by an instruction from the court. In his concurring opinion in Krulewitch v. United States, 336 U.S. 440, 453, 69 S.Ct. 716, 723, 93 L.Ed. 790, 799, Mr. Justice Jackson said:

'The naive assumption that prejudicial effects can be overcome by instructions to the jury, * * * all *practicing lawyers know to be unmitigated fiction.'* " (Emphasis ours.)

■ In the same case the Minnesota court ably deals with a question raised by the prosecutor in his brief here, namely, that if there were ample other evidence to convict, this impropriety, if any, should not cause a reversal. Here is what the Minnesota Supreme Court said on this subject in State v. Huffstutler, 130 N.W.2d 347, 348:

We think the record fully supports the finding of the jury that defendant was guilty of the crime charged. The record, however, is fatally marred by improper conduct which prevented defendant from having a fair trial.

It also is quite clear from this record that this book, red-lettered "Known Criminals", lay exposed on the table of the prosecutor in plain view of the jury.

■. There is no reason why a defense counsel, being unable to predict an answer, must make his objection to a proper question which results in an improper and prejudicial answer. We note the following comment to the court in chambers by defense counsel:

* * * The reason I am clarifying that the objection was not made immediately upon the spot would be the purpose of doing so because of its inflammatory nature and the reaction of this particular comment would have upon the jury and call it to their attention.

What defense counsel was saying here was, that any discussion of this matter in the presence of the jury by further objections and argument would have aggravated the situation in which the defendant found himself. Although it is not clear to us whether the prosecutor took the course he did in order to establish identification, or to put over the idea of previous offenses,

we note the following language by the court in chambers to the attorneys:

THE COURT: With permission of the attorneys for both sides, the two pictures on the left side of the picture, police number dated in 1956, and I feel that that is objectionable and I will exclude the evidence. The two pictures on the right side, one has the number 1961 which indicates some type of record in 1961 and I would also rule against this if it were offered into evidence. The Court feels that *the witness has already identified the defendant by the witness* and by reference to pictures and the Court feels that these pictures may be prejudicial and as such if they are offered and if it is the plan to offer them, the Court will rule against their being permitted into evidence. Now, if it should develop that the defendant takes the stand, is questioned, his reputation for truth and veracity is put in issue, then, of course, these rulings are subject to change. (Emphasis ours.)

After further discussion, the court said the following to counsel:

THE COURT: As I understand, there is no issue as to identity. * * *

The conspicuous nature of this book as it lay exposed in the courtroom may be inferred from the following quotation from the transcript, of conference in chambers:

MR. ROSENBERG: Your Honor, I don't know if I made the motion, but I don't know if they (sic) jury is in the courtroom presently and I believe I asked that this complete exhibit with these red lettering thereon be removed from the courtroom.

THE COURT: The Court hasn't noticed the red lettering on the book.

MR. ROSENBERG: It is on the top of the book.

THE COURT: Would you bring it in here.

MR. ROSENBERG: Once again, I believe that I asked that this be removed from the courtroom.

THE COURT: The Court is going to grant that motion and instruct the State's Attorney that this book with red lettering on it referred to as "Known Criminals" "Detective Bureau" be removed from the courtroom.

MR. ROSENBERG: In view of this particular happening, I renew my motion once again for a mistrial based on this particular exhibit remaining in the courtroom in the view of the jury.

MR. WOLF: I think the testimony of the witness identified the book as to what its contents are and the fact that the book remained there or whatever it was there is no indication jurors paged through it. It wouldn't change the content of the motion I don't believe.

THE COURT: Well, the Court will maintain its ruling subject to any change, if any further conditions develop, but it's the order of the Court now that this particular book with the marking on be not used in the courtroom in any way. * * *

The court below had definite ideas about this book, and its nature and its effects, which are shown by the following language: * * * If the contents of the book are admissible for some other reason, that's fine, *but the cover of the book with the wording could be and is prejudicial and I don't think it should be permitted to remain in the courtroom so the jurors can view the title of the book*. (Emphasis ours.)

The colloquy in the court's chambers then terminated with the following exchange:

MR. WOLF: I might state for the record, I did not examine the cover of the book. I merely asked him to bring the selection of the pictures, nor do I recall specifically—I don't recall the terminology that I used as a matter of fact. I was thinking of the next question.

MR. ROSENBERG: As I recall, he took it from the book of "Known Criminals" and that was the basis and reason for my motion is because of these red lettering and the reference, of course. The Court Reporter can varify (sic).

MR. WOLF: I am not disputing what he is saying, I don't remember. He was making reference to the selection of the pictures.

THE COURT: That's the situation then. We will return to the Courtroom and I am giving you back Plaintiff's Exhibit 3, Mr. Wolf.

Upon resumption of the trial in open court before the jury, the court made the following statement, which was obviously intended to be curative in nature:

THE COURT: * * * Members of the jury, at this recess the Court heard some motions and arguments which explains the reason for starting again and the Court rules some testimony by this witness to the effect that a book was used showing pictures of criminals and the Court feels that this is improper evidence and the Court is allowing the motion of the defendant to strike this from the record, so you, as members of the jury, are not to consider any statements made by this witness in respect to a book containing pictures of criminals. It is not proper evidence, should not be considered by any way, shape or form. The thing we have to consider is guilt or innocence of this defendant in this case. Any reference to anything else is not proper in this case at this time. So I am going to ask you to disregard it completely and do not consider it in any way when you retire to the jury room.

Subsequent to this, the prosecuting attorney continued in a proper way to pursue the question of identification by photograph by asking Detective Meier the following:

Q. (by Mr. Wolf) Mr. Meier, at any time of this particular session at your office with Richard * * *, did he at that time point out a photograph which was one that was known to you to be the defendant?

A. Yes.

Q. And had he given you a description previous as to what the defendant looked like?

A. No, sir.

Q. Had you asked him to give a description or didn't you?

A. No sir, I did not.

In examining the instructions to the jury, subsequently given at the close of the trial, by the court, we also find the following language, which might be interpreted as a further attempt by the court to cure the harm done to the defendant by the reference to prejudicial evidence:

During the course of the trial certain testimony was objected to, the objections thereto sustained, and the testimony ordered stricken. I am sure you understand, and you are so instructed that, as to any such testimony which was stricken, it is as though such testimony was never given and the same should be wholly and totally disregarded by you in your deliberations.

When both parties had rested, defense counsel made this renewal of the motion for mistrial, the pertinent parts of which are hereby reproduced:

* * * Secondly, I renew once again my motions previously made based upon the fact of the inflammatory material concerning the known criminals being referred to and the fact that the defendant feels that this admonition to the jury is not sufficient in any way of them disregarding this inflammatory material. * *

This renewed motion was again denied. However, we note the following language in the transcript:

THE COURT: Then the third pat (sic) renewing the motion for mistrial on the grounds of this book with the state-

ment "known criminals" on it. Off the record. ((Whereupon, a discussion was had off the record.))

THE COURT: Getting back to the third part of the motion for mistrial, the Court will still stay with its original ruling and deny the motion at this time. ((Whereupon, the Court reconvened in the Courtroom within the presence of the jury at 3:28 P.M.))

At this crucial point in this criminal action, we are deprived of the benefit of knowing what discussion went on between court and counsel because said discussion was placed off the record by the trial court's own direction to the reporter. This use of "off the record" discussion at an important juncture in a criminal case is disapproved of, as it deprives us of the opportunity to examine the full record, which is left in an area of limbo and uncertainty as to what was said. Probably nothing important occurred, but any doubts must be resolved in favor of a defendant in a criminal case.

There is no question about the fact that the reference in testimony to, and the physical viewability and perhaps unintended exhibition to the jury of, this red-lettered book entitled "Known Criminals", was strongly prejudicial to the rights of this defendant. The trial judge called it prejudicial in the record, in denying defendant's motion and in admonishing the jury. The trial judge did make an effort to correct this situation by a curative statement to the jury, and later by a statement contained in the instructions. However, in the light of practical courtroom atmosphere in a criminal case, as distinguished from esoteric theory, not only did prejudice result to the defendant, but the effect of such prejudice was not cured by what the court said in admonishing the jury and later in its instructions. It would require extreme naivete to hold otherwise. Quoting 53 Am.Jur. 968, we note the following language:

* * * A mistrial may be necessitated by incompetent questions which are asked

witnesses, or where evidence is introduced which is of such nature that the damaging effect cannot be removed by an admonition to the jury.

Admonishing the jury and the striking of evidence do not always serve the result intended, to cure the prejudice that results. In this connection we quote from State v. Egbert, 63 S.D. 324, 258 N.W. 283, 288:

* * * We are of the opinion that the trial court correctly decided in granting the motion to strike that this evidence was not material and had no connection whatever with the issues of this case. It was seemingly an apparent attempt to involve in some manner and discredit the commissioner Dean, and entirely collateral to any issue involved in this case. However, we are of the opinion that the prejudice incurred by reason of the introduction of this evidence was not obviated or overcome by striking it from the record. The evidence was such that it might naturally tend to affect the prejudices or feeling of the jury, and we do not believe that any statement by the court to the effect that the evidence was withdrawn from the jury's consideration could remove from the minds of the jury the impression made at the time the evidence was admitted. Where evidence improperly admitted has created prejudice, which in the opinion of this court is not removed by the subsequent withdrawal of the evidence from the consideration of the jury, this is error upon which the judgment will be reversed. Crisp v. State Bank of Rolla, 32 N.D. 263, 155 N.W. 78; State v. Yates, 99 Minn. 461, 109 N.W. 1070.

The South Dakota case cited (State v. Egbert) is a criminal case and obviously the prejudice resulting in a criminal case is more damaging than in a civil case, and therefore the rule should be stricter in a criminal case in favor of a criminal defendant. However, the South Dakota court quoted with approval from the North Da-

kota civil case of Crisp v. State Bank of Rolla, 32 N.D. 263, 155 N.W. 78, 81:

\* \* \* The cross-examination of the cashier may have decided one or two or a number of the jurymen, but we cannot·presume that it decided or influenced all. We realize that the general rule is that:

> "If inadmissible evidence has been received during a trial, the error of its admission is cured by a subsequent withdrawal before the trial closes and by an instruction to the jury to disregard it, or even by an instruction to disregard without more; the view being taken that such an instruction is equivalent to striking the improper evidence out of the case."

There is an exception to the rule, however, which is as well established as is the general rule itself, and that is that:

> "Where the evidence thus admitted is so impressive that, in the opinion of the appellate court, its effect is not removed from the minds of the jury by its subsequent withdrawal, or by an instruction of the court to disregard it, the judgment will be reversed on account of its admission, and a new trial will be granted."

■ The prosecution in a criminal case may not introduce evidence tending to prove that the defendant was morally deficient, *that he possessed a criminal disposition generally,* or that he was particularly disposed to commit the offense with which he is charged. State v. Gummer, 51 N.D. 445, 200 N.W. 20, 33.

In the above case, in the body of the opinion, we find the additional interesting language relating to certain prior specific conduct under comparable conditions:

> We do not regard the evidence as admissible to prove, or as tending to prove, that the defendant was morally deficient; that he possessed a criminal disposition generally, or even that he was particularly disposed to commit sexual offenses. We recognize the full force of the rule that excludes evidence of other acts for such purposes. Futhermore (sic), this rule is too firmly embedded in our trial procedure to be any longer open to question, and it is not justly subject to the criticism that it shows too much mercy to a guilty party. On the contrary, the rule finds ample justification in its clear tendency to protect those who may be innocent of the crime charged against consequences that would naturally follow the showing of an unsavory past record. See Wigmore on Evidence (2d Ed.) § 194. In this respect the Anglo-American differs from the Continental system of evidence. \* \* \*

In State v. Moore (N.D.), 101 N.W.2d 579, 586, this court held that the trial court's curative statement justified denying motion for mistrial, where evidence was admitted by one codefendant against the other for a limited purpose. An admonition having been given there by the trial court, this court held that any prejudice was cured. However, this court then proceeded to quote with approval the following:

> \* \* \* *But if the evidence is of such an exceptionally prejudicial character that its withdrawal from the consideration of the jury cannot remove the harmful effect caused by its admission, a new trial will be granted.* \* \* \* (Emphasis ours.) Dolan v. United States, 8 Cir., 218 F.2d 454, 460.

■ The underlined material above clearly fits the case before us, and distinguishes this case from *Moore.* In any future case, there must be a like weighing of the facts and situation, in order to apply this rule of law, or its exception.

■ In normal police and investigative procedures, especially in the case of sex criminals, it is common practice to use *identification books of this type.* The

reason that police and investigative agencies do this is that sex criminals follow known patterns (modus operandi), and are repetitive in the nature of their crimes. That which is the proper investigative procedure, and in the best interests of the public, may also be something which should not be exhibited, either openly or covertly to a jury by display on a courtroom table. When it is referred to by a witness, namely a police officer, the effect can be disastrous. This has nothing to do with the principle that, under some conditions, prior convictions can be introduced in evidence. It is true that they may be. However, there is no such attempt here, but merely the display, and reference to in evidence, of some book called "Known Criminals", which is used with reference to a defendant. This is comparable to the techniques used in the Middle Ages when criminals were branded with a certain brand to correspond to the nature of their past crimes.

 Since in this case the defendant did not take the witness stand, the State was deprived of the right to cross-examine him concerning past criminal convictions. The record is silent as to any attempt by the State's Attorney to introduce as part of the prosecution's case, any record of similar offenses, and therefore the State's contention that previous offenses may be introduced under some circumstances, is a moot question and not one involved in this criminal action.

The trial court erred in denying defendant's motion for mistrial as renewed, and new trial is granted.

TEIGEN, C. J., and STRUTZ, KNUDSON and ERICKSTAD, JJ., concur.