STATE of South Dakota, Plaintiff and Appellee,

v.

Stanley Owen REED, Defendant and Appellant.

No. 15023.

Supreme Court of South Dakota.

Argued Feb. 11, 1986.

Decided April 23, 1986.

Rehearing Denied May 26, 1986.

 11

Grant Gormley, Chief Deputy Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Debra D. Watson and Benjamin J. Eicher of Wallahan Law Offices, Rapid City, for defendant and appellant.

WUEST, Justice.

Appellant, Stanley Owen Reed (appellant), was found guilty of attempted second-degree rape by a jury verdict and sentenced to the state penitentiary. He appeals and we affirm.

In September 1984, appellant was invited to the trailer house of Debra Baker Brown (Brown) to lay some carpet. Later that day, he was left alone with Brown's daughter, and the victim, a friend of the daughter. Both girls were fourteen years old and seventh graders.

There is a dispute in the testimony of appellant and the victim. Victim testified she was sitting on a bean bag chair when appellant began to tickle her. He said "I'm horny," and she replied, "Let's go." Appellant grabbed her, pulling her up, and she sat back down on the chair. He then got her back up and they walked toward the bedroom. As they went, she told him, "Don't." Upon entering the bedroom, appellant placed her on the bed and began to remove her shirt by lifting it up from the bottom. She again said to appellant, "Don't," and he replied, "I won't take no for an answer." She claimed he unhooked and removed her bra, as she tried to hold it on; that he then unzipped and unbuttoned her jeans pulling them down, although she tried to hold them up by hanging onto the belt loops. Appellant sat on her arms to keep her in position while he removed his

clothing. While he was in a state of undress, the other girl entered the bedroom on her way to the bathroom, and discovered appellant with his pants and underwear down. The victim testified she softly called to the other girl but was afraid to speak loudly. She claimed appellant told the other girl to leave the room, which she did. Appellant then had sexual intercourse with the victim. She told him to refrain but he responded by placing his hand over her mouth. While they were engaged in intercourse, a car came to the trailer house and appellant told the victim to get her clothes on as he ran into the bathroom to dress. Three people entered the trailer as appellant and the victim came out of the bedroom fully dressed.

According to appellant's version, he and the two girls were sitting in the living room visiting when the victim stated to him, "Come on." She took him by the hand and led him into the bedroom in the trailer house while the other girl was talking on the telephone. When they entered the bedroom, the victim took off her clothing and got under the bedcovers. He began taking off his clothes and got his underwear and pants down to his knees. He had an erection, at which time the other girl entered the bedroom and said, "God, you guys." He and the victim immediately dressed and went into the living room, at which time three friends arrived. Appellant further testified that when he went into the bedroom with the victim and commenced taking off his pants he intended to have sexual intercourse with the victim; however, when the other girl came into the room he lost his erection, changed his mind, and immediately dressed, with nothing occurring between himself and the victim. The three friends came into the trailer and nothing was said about the incident for several weeks.

Several weeks after the incident, appellant and others were visiting at the Brown trailer house. According to people present at that occasion, appellant began boasting he had sexual intercourse with the victim and would do it again. Sometime after this

conversation, Brown contacted the victim's mother and told her the girl had been raped. Victim's mother refused to believe Brown until she had asked her daughter if it was true. At first the victim repeatedly denied the fact, but finally admitted appellant had raped her. The incident was reported to the police department, which resulted in this prosecution for second-degree rape.

Prior to trial, appellant made a motion to prevent the state or any of its witnesses from testifying either directly or indirectly concerning his past criminal record for the reason that all of the offenses other than a third-degree burglary charge were misdemeanors. The motion further alleged the third-degree burglary conviction would be more prejudicial than probative and could lead the jury to believe that charge was another rape. On the day of trial, the court entered its order reserving its ruling "until immediately prior to the time the defendant is called as a witness, on his own behalf, should he decide to take the stand."

The first witness for the state was the victim. After the usual preliminary questions as to name, age, and address, the victim was asked if she knew Mr. Reed. After answering in the affirmative, the following occurred:

Q Do you know how old Mr. Reed is?

A Yes, He's in his twenties.

Q When did you first meet him?

A When he got out of jail.

Appellant immediately objected and made a motion to strike. The court promptly granted the objection and motion to strike. The court further admonished the jury to disregard the statement. Appellant then made a motion in chambers for a mistrial, claiming the state had violated the court's order, which was highly prejudicial to appellant. In response to the motion for a mistrial, the deputy state's attorney told the court the witnesses were instructed not to comment on defendant's record. Upon specific inquiry from the court whether he had admonished the witness, the deputy replied: "That's right, Your Honor. I will

do it again." The court then observed the witness was a fourteen-year-old girl who was apparently nervous. The court did not believe the statement was prejudicial and denied the motion for mistrial. Afterward, on a motion for a new trial, the court said the answer was not a result of "bad faith or governmental overreaching or even negligence on the prosecutor's part." The court concluded:

I am finding that from my recollection of the events as they occurred, and although this was error, I am going to find that this error, defect or irregularity or variance does not affect substantially the rights of the Defendant. That the immediate admonishment and the curative instruction were sufficient.

Appellant claims the court's order was violated by the unsolicited response of the victim. The comments of counsel and the court indicate an assumption on their part that an order was violated. However, a careful examination of the record and transcripts reveals no such order was entered. Rather, a transcript of the pretrial hearing and another prior to trial clearly show the court refused to enter such an order, but reserved its ruling.

We recognize there are situations when a witness gives an unsolicited answer which is so prejudicial nothing but a new trial can assure the defendant due process. *See State v. Schlittenhardt,* 147 N.W.2d 118 (N.D.1966). Certain evidence or conduct may be such that it cannot be corrected by admonition. *State v. Webb,* 251 N.W.2d 687 (S.D.1977); *State v. Norman,* 72 S.D. 168, 31 N.W.2d 258 (1948); *State v. Egbert,* 63 S.D. 324, 258 N.W. 283 (1935).

In *State v. Farley,* 290 N.W.2d 491 (S.D. 1980), wherein a witness gave an unresponsive answer that the van the defendant was arrested in on a robbery charge was stolen, we said: "The trial judge has wide discretion in determining the prejudicial effect of a witness' statements, and it is only when this discretion is clearly abused that this court will overturn a decision." 290 N.W.2d at 494 *citing State v. Winckler,* 260 N.W.2d 356 (S.D.1977). In *State v.*

*Closs,* 366 N.W.2d 138, 143 (S.D.1985), we said: " 'An actual showing of prejudice must exist to justify the granting of a mistrial.' *State v. Clabaugh,* 346 N.W.2d 448, 451 (S.D.1984). Trial courts have considerable discretion in ruling upon a mistrial."

The trial court's decisions denying appellant's motion for a mistrial and later a new trial were not abuses of discretion. It observed firsthand the effect of the remark upon the jury, and determined the jurors were capable of considering the remaining evidence in an unbiased manner despite the remark. We find no abuse of discretion there.

Appellant contends instructions numbered 5 and 13 were impermissibly modified by the trial court after the instructions had been settled. After both sides had rested, appellant and state appeared before the trial judge to settle the instructions, which were to be read orally to the jury and then presented to it in written form for its deliberations. Appellant made no objection to instruction number 5 at this time. The pertinent part of this instruction, as settled, stated:

> The burden of proof rests upon the state to prove all material allegations of the Information and each and every *doubt,* and such burden of proof never shifts to the Defendant, but rests upon the State throughout the trial of the case to prove the Defendant guilty of the offense charged by proof beyond a reasonable doubt[.] (Emphasis added.)

As the trial judge read the instruction to the jury, he realized the word "doubt" in the first line of the instruction was an error and should have been "element," so he read the first sentence of the instruction to the jury with the word "element" in it rather than "doubt." The judge also drew a line through the word "doubt" and wrote above it the word "element."

Appellant's counsel did not object to this one-word change in the instruction nor did she approach the bench and ask for permission to make a record outside of the hearing of the jury. Indeed, counsel did not object to this alteration until the mitigation and sentencing hearing, when she moved for a new trial because of the change. The trial court replied to her objection at this time, saying: "So if you refer back to the pattern you see when you're reading the instructions aloud and you notice that there's been a typo and that's when I corrected that in my own handwriting, but you were following along, I assume, when I was reading the instructions, weren't you?" Counsel for the defense replied, "No, I was working on my closing, the final touches on it."

 The court shall in no case qualify, modify, or in any manner explain to the jury any written instruction given, unless such qualification, modification, or explanation shall first have been reduced to writing and made a part of such instructions and settled. SDCL 15–6–51(a). This rule is applicable to both civil and criminal cases. SDCL 23A–25–4. *See also State v. Roberts,* 60 S.D. 362, 244 N.W. 389 (1932). When these rules are patently disregarded, the case will be reversed without inquiring into any questions of prejudice. *Roberts, supra.* We do not regard the modification of instruction number 5 as patently disregarding the rule. We consider it harmless error. "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." SDCL 23A–44–14. *See State v. Remacle,* 386 N.W.2d 38 (S.D.1986).

Appellant also challenges instruction number 13, claiming it was impermissibly modified by the addition of fifteen words inserted into the instruction in the judge's own handwriting. During the settling of the instructions, appellant objected to instruction number 13 on the grounds that there was not sufficient evidence to justify the inclusion of a lesser included offense. The court overruled the objection and the instruction was presented to the jury.

During its deliberations, the jury sent the court a question which was transcribed as follows: "Instruction No. 13 and No. 15 seem to be conflicting with each other. Is there any source that could help us solve

this dilemma? Signed Steven Walling." The trial court called appellant and his counsel and counsel for the state together to consider the jury's question, his proposed solution, and to resettle the instructions. After discussion, it was agreed by all of the parties that the court would advise the jury "the instructions are not conflicting, but definitional. Number 15 defines and explains a term used in the first element of Instruction No. 12. Number 13 defines and explains a phrase used in the second element of Instruction No. 12."

The trial court then advised the parties that fifteen words were inadvertently omitted from instruction number 13 which was drafted in accordance with the South Dakota Pattern Instruction. The court proposed that these words be added to the instruction simply to make it read better. Appellant objected to the addition of the deleted words, arguing it would be improper to give the jury a new instruction at that time. The court overruled the objection, called in the jury and read it the above proposed answer to its question.

The trial court then advised the jury about the addition of the deleted words, stating: "In addition to your note and your request, in Instruction Number 13, fifteen words were erroneously omitted. I have taken your Instruction Number 13 and in my own handwriting inserted those words. They do not go to the question that you put to the Court, however." On appeal, appellant contends, first, that it was error for the court to modify the instruction even if it was a correct statement of law, and, second, that the addition of the fifteen words was unduly emphasized by the fact that they were submitted in the judge's own handwriting.

■ The court may, after the giving of instructions and at any time before verdict, recall the jury for further instructions, which, if given shall be given in full compliance with the provisions of SDCL 15–6–51(a) and (b). This rule also applies to criminal cases as well as civil. SDCL 23A–25–4.

■ Although the omitted words were discovered when the jury requested further information, the court complied with SDCL 15–6–51(a) and (b), giving appellant an opportunity to object to the addition, which he did. However, no objection was made on the grounds the addition to the instruction was in the judge's handwriting instead of being typed. If this objection had been made at that time, it could have been easily retyped. The issue of judge's handwriting was not raised until later at the motion for a new trial. A defendant should not be permitted to quietly acquiesce, thereby preserving an error for later use in the event of an adverse verdict. Our rules provide that an objection must be made when the instructions are settled, otherwise error is not preserved. SDCL 15–6–51(b); *State v. White Mountain*, 332 N.W.2d 726 (S.D. 1983). Nor, does this incident constitute "plain error" within the purview of SDCL 23A–44–15. "Plain error" is applied cautiously and only in exceptional circumstances. *White Mountain, supra.*

Finally, appellant contends the trial court erred by instructing the jury over his objection on the lesser included offense of attempted second-degree rape, pursuant to SDCL 22–4–1.

■ Two tests must be met, the first legal and the second factual, before the trial court can submit an instruction of a lesser included offense to the jury. *State v. Heumiller*, 317 N.W.2d 126 (S.D.1982). Appellant does not contend the "legal test" was not met. He does contend, however, that the factual test was not met. The factual test adopted by this court is found in *People v. Karasek*, 63 Mich.App. 706, 712–14, 234 N.W.2d 761, 765 (1975), and provides, in part: "There must be sufficient evidence, however, when read in the light most favorable to the defendant, which would justify a jury in concluding that the greater offense was not committed and that a lesser offense was, in fact, committed." *See Heumiller, supra.*

■ Appellant claims the evidence in this case, when read in the light most favorable to him, merely shows preparation as distin-

guished from an attempt. SDCL 22–4–1, which describes "attempts," states: "Any person who attempts to commit a crime and in the attempt does any act toward the commission of the crime, but fails or is prevented or intercepted in the perpetration thereof, is punishable[.]" This statute was interpreted in *State v. Judge*, 81 S.D. 128, 131 N.W.2d 573 (1964), and *State v. Martinez*, 88 S.D. 369, 220 N.W.2d 530 (1974). In *Martinez*, we said:

> The defendant maintains that the commission of the last further act necessary to the actual accomplishment of the crime is requisite to an attempt. We believe, however, that the statute requires only *"any* act toward the commission of such crime * * * "* (emphasis supplied), and that *State v. Judge*, [81 S.D. 128, 131 N.W.2d 573 (1964)], interprets the statute as meaning any *unequivocal* act to insure that the intended result was a *crime* and not any other innocent act. The line between preparation and attempt is drawn at that point where the accused's acts no longer strike the jury as being equivocal but unequivocally demonstrate that a crime is about to be committed. See *People v. Miller*, 2 Cal.2d 527, 42 P.2d 308, 98 A.L.R. 913.

88 S.D. at 372, 220 N.W.2d at 531 (emphasis in original). We then held that when defendant partially undressed an underage girl and laid on top of her, all within the space of one or two minutes, the jury would be justified in finding that the defendant's acts had gone "so far that they would [have] result[ed] in the accomplishment of the crime unless frustrated by extraneous circumstances." *Judge*, 81 S.D. at 133, 131 N.W.2d at 575.

We conclude in this case that with the victim undressed in bed and appellant with his pants and underwear down to his knees with an erection, the jury was justified in finding that if the other girl had not interrupted the parties the appellant would have had intercourse with the victim as he himself admits he intended to do.

We affirm.

FOSHEIM, C.J., MORGAN, J., and HERTZ, Circuit Judge, acting as a Supreme Court Justice, concur.

HENDERSON, J., dissents.

SABERS, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.

HENDERSON, Justice (dissenting).

Appellant was acquitted on a charge of Second-Degree Rape. He was convicted of an Attempt on said charge. Appeal is taken from (1) an Order denying a Motion for New Trial; (2) a Motion for Judgment of Acquittal Notwithstanding the Verdict; and (3) a Judgment and Sentence confining appellant to the State Penitentiary for two years.

Three people were in the domicile: victim, appellant, and Melissa Goll. Victim testified to an absolute forcible rape with physical penetration; appellant testified he was solicited for sexual intercourse but never went beyond an act of preparation, namely, pulling his shorts and pants down. Melissa Goll, an unbiased witness, testified that (1) victim instigated appellant going to the bedroom with her, (2) victim told appellant "she wanted to jump his bones," (3) appellant did not respond thereto, (4) victim "grabbed [appellant] by the hand and took him in the bedroom," and (5) victim "just walked over to him and grabbed his hand."

Melissa Goll, victim's teenage friend, repudiated and contradicted victim's entire story under oath—to include the act of claimed intercourse supposedly lasting 5 to 10 minutes after she entered the room. Rather, this third-party witness testified that she saw victim "under the covers with her hands on top of the covers" and appellant "was sitting on the bed taking his pants off." This same witness testified that immediately after she entered the bedroom, the victim and appellant walked out of the bedroom. "[N]othing happened after that," she swore under oath.

Thus, it is understandable why the jury acquitted appellant of Second-Degree Rape. The jury obviously did not believe the vic-

tim. Should not, therefore, this Court similarly reject the testimony of facts upon which the State relies to moor the trial court's instruction to the jury on the lesser-included offense of Attempted Second-Degree Rape?

In a word: It was Second-Degree Rape under the testimony of the victim or, clearly, there was no crime at all.

My Brothers, is the ink dry on *State v. Waff*, 373 N.W.2d 18, 26–30 (S.D.1985) (Henderson, J., concurring; Fosheim, C.J., dissenting)? [1]

> In sum, *the evidence presented by the State could rationally have supported only a conviction of the offenses charged in the indictment. Defendant was either guilty of those two charges or he was guilty of nothing.* According-ly, the trial court did not err in refusing defendant's requested instructions on first and second-degree manslaughter. (Emphasis supplied mine.)

*Waff*, 373 N.W.2d at 22. Or is the ink dry on *State v. Woods*, 374 N.W.2d 92 (S.D. 1985)? In *Woods*, we held: The defendant either committed the crime of murder or he was not guilty of any crime.

We now are faced with the same old shotgun advocacy of the State: You, the trial judge, are permitted to always instruct on any and all offenses which are lesser included to the highest one charged, in any given case. Fallacious? Of course! Mr. Trial Judge should only instruct on the evidence in the case. This is well-settled law in South Dakota. *See State v. Fender*, 358 N.W.2d 248, 252 (S.D.1984); *State v. Huber*, 356 N.W.2d 468, 472 (S.D.1984); *Miller v. State*, 338 N.W.2d 673, 676 (S.D. 1983); *State v. Chamley*, 310 N.W.2d 153, 155 (S.D.1981); *State v. Oien*, 302 N.W.2d 807, 809 (S.D.1981); *State v. Curtis*, 298 N.W.2d 807, 810 (S.D.1980); *State v. Wilson*, 297 N.W.2d 477, 482 (S.D.1980); *State v. Feuillerat*, 292 N.W.2d 326, 334 (S.D.

1980); and *State v. Bean*, 265 N.W.2d 886, 891 (S.D.1978).

As the lesser-included offense, i.e., Attempted Second-Degree Rape, is not supported by legally sufficient evidence, the trial court erred in so instructing the jury. The entire force of the prosecutor's case was that the appellant accomplished an act of sexual intercourse with a young girl who could not, by law, consent. Furthermore, the State sought to establish that appellant's actions were forceful, if not savage.[2] The prosecution never tried to establish that appellant attempted to commit a rape. Appellant is convicted via a compromise. A compromise resulting from a jury instruction which absolutely should not have been given. *See* collected cases above and *Waff* and *Woods*. Justice should not be compromised.

Under *State v. Oien*, 302 N.W.2d at 808, a lesser-included offense instruction can only be given if the evidence and law applied thereto warrant a conviction upon the convicted offense. This is still the law of this state. Hence, I would reverse. It was rape or no crime at all. Attempted Second-Degree Rape was simply not in the proof. When it is not in the proof, it should not be instructed upon.

An unbiased witness, a close friend of the victim, testified that the victim was the aggressor and solicitor of an act of intercourse and the attempt was committed on her part. True, his intention, from out of his own lips, was to have intercourse with the victim after she suggested the act and led him to the bedroom. However, that did not take place; furthermore, if his testimony is to be used against him that he intended to have sexual intercourse with the victim, then he should also have the benefit of his testimony that he changed his mind and immediately dressed, whereupon nothing occurred between himself and the victim.

---

1. The majority opinion depends on an 11-year-old case in the State of Michigan, namely, *People v. Karasek*, 63 Mich.App. 706, 234 N.W.2d 761 (1975); whereas, this dissent is aligned with two well-reasoned 1985 South Dakota Supreme Court cases.

2. The State's case totally crumbled under the testimony of Melissa Goll, a witness present at the scene of the alleged crime, and the jury so held.

Clearly, the most powerful witness in this case was Melissa Goll and her strongest statement to implicate the appellant of an act toward the commission of a crime, was appellant "was sitting on the bed taking his pants off." Again, it should be noted that appellant was acquitted on the charge of Second-Degree Rape and he is totally innocent, in the eyes of the law, of such an allegation. Perhaps there were intentions on the part of appellant to commit statutory rape, but these intentions did not rise to the level of an overt act, i.e., an attempt of Second-Degree Rape. Preparation, yes; attempt, no. Melissa Goll testified that the victim was "under the covers with her hands on top of the covers"; this indicated preparation and arranging the means for the offense was triggered by the victim, not the appellant, per the testimony of Melissa Goll. If the jury believed Melissa Goll, and obviously it did, then her testimony was accepted that the appellant "was sitting on the bed taking his pants off." This, unquestionably, was preparation and under Jury Instruction No. 13, appellant might well have devised, obtained, or arranged the means for a commission of Second-Degree Rape, yet that would not be sufficient to constitute an attempt. There must have been acts beyond that in order that an attempt to commit such a crime was actually commenced toward the doing of the criminal deed.

When one considers the jury instruction mistakes in this case and the fact that appellant, through his counsel, objected to the addition of deleted words—strenuously asserting that it was improper to give the jury a new instruction long after the case was submitted to the jury, it strikes me as being highly unfair for this Court to assert that the appellant, impliedly, quietly acquiesced in the giving of an amended, handwritten instruction to the jury. Indeed, the handwriting of the trial judge did specifically highlight the very crime of which appellant was convicted. *See* photostatic copy of Jury Instruction No. 13, attached hereto and by this reference made a part hereof, with judge's handwritten notes inserted, which pertain to an attempt to commit a crime. This instruction stuck out like a sore thumb and it was no wonder that the defense lawyer fought the instruction. "[I]nstructions should not give undue emphasis to any phase of the case favorable to either side and *even correct statements of law if unduly emphasized* may constitute reversible error." *Jorgenson v. Dronebarger,* 82 S.D. 213, 219, 143 N.W.2d 869, 872 (1966) (emphasis supplied mine). *See also, Mueller v. Mueller,* 88 S.D. 446, 221 N.W.2d 39 (1974).

This jury was confused and troubled by the language in these instructions and, particularly, on Attempted Second-Degree Rape (which lesser-included instruction should never have been submitted to the jury in the first instance). Discovering that 15 words were omitted from the Pattern Jury Instruction, the trial judge stated that he was going to insert those words. He expressed: "I am going to take the Instruction that was given to them and in my own handwriting insert those words." Defense counsel immediately objected to this alteration. This is found at Trial Transcript, pages 215–16. Thereafter, the jury was informed of these handwritten changes by the judge. We now must examine whether or not Jury Instruction No. 13, as amended and modified by his handwriting, is a separate error of magnitude in instructing the jury.

The judge's phrase "but acts of a person who intends to commit a crime will constitute an attempt" was obviously a material change to the instruction; reading it alone, when it protruded from the balance of the instruction, the language did not state the proper elements which render an "act" legally sufficient to constitute an attempt. If one reads SDCL 22–4–1, the elements defining a punishable "attempt" are set forth. This particular statute refers to an "act toward the commission of the crime...." The words added by the trial judge give undue emphasis to intent. Please take note that acts "toward the commission of the crime" are not included. In Jury Instructions Nos. 11 and 12, statutory language was employed stating that a

"direct act in the execution of such specific intent and toward the execution of the crime" were required elements or at least the required element for an attempt. However, the judge's handwritten notes in Jury Instruction No. 13, took this away from Jury Instructions Nos. 11 and 12. Certainly *any act* or *acts* of a person, as suggested by the trial judge in his handwriting, would not constitute an "attempt" once "intent" had been established. It appears to this author that Jury Instruction No. 13 thus confused the jury and did mislead the jury as to the correct law. A lesser-degree of proof was created by the judge's handwriting and it stood out for the jury to read—all by itself—which prompted the jury toward returning a verdict of guilty on an attempt. Expressing it another way, the court's handwriting inferred that mere "acts of a person who intends to commit a crime will constitute an attempt" was legally sufficient to find an attempt, did thereby eradicate the absolute requirements that an act had to be a "direct" act—which had to be beyond mere preparation—and an act "toward the commission of the crime." In effect, as long as the defendant was shown to have evidenced an intent, any act whatsoever was enough to permit the jury to convict this defendant.[3] The trial judge founded his unilateral modification on SDCL 15-6-51(c), which gives him the authority to give oral instructions. This was wrong because counsel had settled the instructions and a trial judge cannot give oral instructions after written instructions have been settled. Furthermore, as mandated by SDCL 15-6-51(c), there was no consent given to oral instructions or a waiver thereof.

Good precedent? Or bad precedent? What have we here? Let us reflect. In the milieu of the world and the hubbub of the day, reflection can be a sanctuary. Must counsel hereafter follow the reading of the jury instructions, word for word, lest the trial judge change the instruction? Indeed, this would be awkward and cumber-

some. Counsel at this time is readying arguments, coagulating key testimony, honing a final plea to the jury. Counsel has the right to rely on instructions that are settled. If the judge decides he wants to change the instructions (as he is reading them to the jury), he/she had better inform both counsel as to what he is about to do (at Bench Conference—quietly—and not for the jury to hear) so that counsel may retire to Chambers and thereupon, *anew*, settle the instructions *again*, and make a record. This was not done on Jury Instruction No. 5, although I note that it involved but one word. There is no more tender time in a trial than the settling of instructions. Great pressure exists on the trial judge and counsel. Somewhere in the courthouse, the jury is waiting and wondering why there is a delay. A trial judge and counsel work late into the night, oftentimes, to get the jury instructions exactly as they mutually agree or totally disagree. If there is disagreement, it is noted, in detail, in the record. We require counsel to make specific objections as to why the trial court is committing error. How, then, during instructions to the jury, can a judge logically, legally, and spontaneously decide that the preparation in counsels' office, hours in the courthouse, and brain power exerted before a Court Reporter in "protecting the record" can be cast aside?

In summation, appellant was acquitted of that with which he was charged; appellant was convicted of that which was never in the proof. Considering the errors on instructions of law, which I have detailed above, a fair trial, in my opinion, was prevented. "A trial court must present only those issues to the jury which are supported by competent evidence and set forth the applicable law." *State v. Johnson*, 320 N.W.2d 142, 147 (S.D.1982). A defendant is constitutionally entitled to a fair trial before an impartial jury. *State v. Webb*, 251 N.W.2d 687 (S.D.1977). Hence, I respectfully dissent.

---

**3.** When a verdict of guilt or innocence was mulled—under this set of facts—as to where "preparation" ended and "attempt" began, this handwritten instruction unquestionably had a devastating effect on the jury verdict. It tipped the scales.